THE PEOPLE, *ex rel.* Smith, *vs.* THE CITY OF BROOKLYN.

The substitution of new curb stones and gutters for old ones, are *repairs*, within the meaning of section 1, title 4, of the charter of the city of Brooklyn, (*Laws of* 1850, *p.* 264,) which confers upon the common council the general power to make such improvements in and about the streets as the public need and convenience may require, and provides that the expenses of such improvements, *except for repairs*, shall be assessed upon the property benefited thereby.

The charter of the city of Brooklyn seems to require that the expenses of new works shall be borne by those who are directly and specially benefited by them; and it includes as new work all that may be necessary by reason of nonconformity to the ordinances of the common council; by which is meant the ordinances existing at the time when the original work is done.

When a street has been once put in a condition conformable to what is required at the time, whatever is subsequently done to it *for the purposes of a street*, whether in improving an existing constituent, or substituting a new one, or in adding some material required by a new regulation, comes under the head of *repairs*, and as such becomes a general charge upon the city.

The expenses, therefore, of setting new curb stones and gutters in a street, instead of the old ones, which are alleged to be low and irregular, and out of order, cannot be assessed, by the corporation, upon the property supposed to be benefited.

Where a proposed alteration in the grade of a street is to be the basis of a local assessment, the initiatory proceedings should clearly state the facts indicative of the design; in order that the owners of the adjoining lots may receive timely notice of the proposed requisition upon them.

The People *v.* City of Brooklyn.

For that purpose the notice required by the statute (*Laws of* 1850, *p.* 251, *sub.* 23 *of sec.* 13) to be given of the application for, or intention to pass, the ordinance, is all important; and if it does not appear that any such notice was served or published, the presumption that *omnia rite acta* will not justify the inference that one was given.

The giving of such notice is a jurisdictional pre-requisite to the adoption of the resolution by the common council, and its absence cannot be supplied by the certificate of the street commissioner and the attorney and counsel of the city.

A certificate of regularity can never be conclusive, upon the question of jurisdiction, nor in effect confer new powers upon corporate bodies, nor authorize a dispensation with legislative requisitions.

CERTIORARI to remove certain proceedings instituted by the defendants for the setting of a new curb and gutter in Smith street in the city of Brooklyn, between Fulton avenue and Sacket street, which were afterwards reconsidered and changed into proceedings for the re-grading and re-paving of said Smith street and setting new curb and gutter therein, between Fulton avenue and Warren street, the expenses of which were assessed upon the relator and other owners of property supposed to be benefited thereby. The material facts appear in the opinion of the court.

*John A. Lott,* for the relator. I. The proceeding in question was, to all intents and purposes, a proceeding for putting down and laying new curb and gutter stones.

II. The action of the common council in relation thereto, was unauthorized, illegal and void. (1.) Because it did not appear that the old curb and gutter did not conform to the ordinances of the common council. (*City Charter, Laws of* 1850, *p.* 251, § 22.) (2.) Because the notice of the application for, or intention to pass an ordinance for the purpose of making an improvement, was not given to the persons affected thereby, either personally or by publication in the corporation newspapers, as required by law. (§ 23 *of Charter of* 1850, *p.* 251.)

III. The resolution of the common council of December 8th, 1851, could not cure the defect in the proceedings already had.

IV. If the common council had authority, without notice, to re-grade and re-pave Smith street, yet the proceedings in ques-

tion are illegal and void. (1.) Because they assumed to affirm the illegal proceedings previously taken, and to adopt the work previously done, as if done under the resolution of December 8, 1851. (2.) Because the common council did not determine what portions of Smith street should be re-graded and re-paved, but left the whole to the discretion and decision of the street commissioner and Willard Day, one of the city surveyors. (*Thompson* v. *Schermerhorn*, 9 *Barb.* 152.)

V. The common council had no power to assess the expense of the re-grading and re-paving, so called, on the property benefited. What was done in that respect was only, in fact, a repair of the street, and the proceeding was a device to shift the burden from the city at large on private individuals. Expenses for repairs are a general charge. (*Charter*, *title* 4, § 1, *p.* 264.)

VI. The assessment is illegal and void. (1.) Because there was no authority to assess the expense on the property supposed to be benefited. (2.) Because no notice of the commissioner's report or proceedings was ever published. (*Charter*, *title* 4, § 25, *p.* 272.)

VII. All the proceedings, including the assessment, should be declared void and set aside.

*N. F. Waring*, for the defendants.

*By the Court*, S. B. STRONG, J. The common council were clearly authorized to direct Smith street to be regraded and repaved, under the first section of title four of their charter. Whether the alterations thus sanctioned would not include the setting of new curb stones and gutters in lieu of the old ones, might be a question of some difficulty were it not for the specific provision in the 22d subdivision of the 13th section of title two. That confers in express terms the power to cause new curb and gutter stones to be put down and laid where the old ones do not conform to the ordinances of the common council, except when the want of conformity is the result of the action of the common council or of any city officer or officers. The probable inference

is that the specific power is not included in the general allotment. Possibly, however, these improvements were thus particularized for the purpose of assessing the consequent expense upon the adjoining lots. I cannot discern from the return to the certiorari in this case that the proceedings of the common council were had conformably to the provision which I have last quoted. The initiatory report of the city surveyor states that the street had settled below its original grade, and that it was necessary to raise the old crooked eight inch curb so as to conform to the permanent and adopted grade, and recommends the setting of a new curb and gutter, as the old curb and gutter were low and very irregular, and the cross gutters were very much out of order. The report of the street committee states that they had examined into the matter and were of opinion that the proposed " new curb and gutter ought to be set," but it assigns no reasons, and the primary action of the common council was simply the adoption of the report. It might be inferred that the necessity for some part of the proposed new work resulted from the want of conformity of the existing curb and gutter to the ordinances of the common council by reason of the depression of the street, which was not the result of the action of that body, or of any of the city officers. The grade, however, might have been changed by a city ordinance, and that might have created the necessity for the proposed change. As the proposed alteration, however, was to be the basis of a local assessment, the initiatory proceedings should have clearly stated and designated facts indicative of the design ; in order that the owners of the adjoining lots and consequent tax-payers might receive timely notice of the proposed requisition upon them. For that purpose, too, the notice required by the statute in such cases, (*subd.* 23, § 13, *title* 2,) was all important. It does not appear from the return that any such notice was served or published. It might be inferred that those who signed the remonstrance had received some notice of the proceedings ; but that paper was not signed by the relator, nor is there any evidence that he knew any thing about it. The certiorari commands the defendants to return *all* the *proceedings* had and taken by them

for the setting of the new curb stone and gutter, and all *notices* and *papers* whatsoever relating to or concerning the same. The presumption that *omnia rite acta* (if it is at all applicable to corporations or their officers) will not justify the inference that the requisite notice was actually given; especially when, if one was served or published, the defendants are particularly required to include it in their return. The giving of the notice was a jurisdictional pre-requisite to the adoption of the resolution of the common council, and its absence should not, and cannot be supplied by the certificate of the street commissioner and the attorney and counsel of the city. A certificate of regularity can never be conclusive upon the question of jurisdiction, nor in effect confer new powers upon corporate bodies, nor authorize a dispensation with legislative requisitions.

If the proposed new work was not strictly authorized by the 22d subdivision of the 13th section of title two, it may still have been sanctioned by the latter part of the first section of title four of the defendants' charter. That confers the general power to make such improvements in and about the streets as the public need and convenience may require, and it provides that the expenses of such improvements, *except for repairs*, shall be assessed upon the property benefited thereby. The question, so far as this provision may apply to the case under consideration, is whether the substitution of new curb stones and gutters for old ones, are repairs. If they are not, the previous provisions of the act making those improvements, under certain peculiar circumstances, the subject of local taxation, would have been unnecessary. That cannot be presumed, and if the maxim that the statute, so far as it goes, is its own best expositor, is applied, it would follow that the improvements in question are included in the term "repairs." The interpretations given by Walker are "reparation, supply of loss, restoration after dilapidation." The last definition would seem to include whatever might be requisite to restore the positive usefulness of a depressed street. The charter to Brooklyn seems to require that the expenses of new works should be borne by those who are directly and specially benefited by them, and it includes as new work all that

may be necessary by reason of nonconformity to the ordinances of the common council. That must have reference to the ordinances existing at the time when the original work is done, as is evident from the exemption in cases where the want of conformity is the result of the action of the common council. When a street has been once put in a condition conformable to what is required at the time, it seems to me that whatever is subsequently done to it *for the purposes of a street,* whether in improving an existing constituent, or substituting a new one, or in adding some material required by a new regulation, comes appropriately under the head of repairs, and as such becomes a general charge upon the city.

Upon the whole, it seems to me that the proceedings of the defendants and their officers, in the matter in question, were null and void, and that they should be so declared by the judgment of this court.

[Dutchess General Term, April 8, 1856. *Brown, S. B. Strong* and *Rockwell,* Justices.]