(11 Misc. Rep. 199.)

## DENISE v. VILLAGE OF FAIRPORT et al.

(Supreme Court, Special Term, Monroe County. January, 1895.)

1. MUNICIPAL CORPORATIONS—SEWERS—ASSESSING ABUTTING PROPERTY.
    A city charter, providing that whenever any "new" sewer should be constructed the entire expense thereof should be assessed on premises deemed by the trustees to be benefited thereby, does not limit the power of the city to the construction of one new sewer in any street at the expense of the premises benefited, but a new sewer may be constructed when one previously constructed has become inadequate.

2. SAME—REPLACING INSUFFICIENT SEWER.
    Where a sewer consisting of an iron pipe 9 inches in diameter, laid to a depth of 8 feet, proves insufficient, and is replaced by a sewer consisting of an iron pipe 15 inches in diameter, laid to a depth of 10 feet, and on a different line, the second sewer is a "new" one, within a provision of the city charter that the entire cost of "new" sewers shall be assessed on the property benefited.

3. SAME—REVIEW OF ASSESSMENT—ACTION TO ENJOIN COLLECTION.
    The question whether the assessors erred in making an assessment will not be considered in an action to enjoin its collection.

4. SAME—RATIO OF BENEFITS.
    The fact that the assessors adopted a uniform sum per front foot on the street in which the sewer was laid, and a different uniform rate on the other streets, does not raise a presumption that they failed to make the assessment according to the ratio of benefits resulting to the premises from the improvement.

5. SAME—VERIFICATION.
    The Fairport village charter does not require a local assessment to be verified by the oath of the assessors.

Action by Tunis H. Denise against the village of Fairport and James White to perpetually enjoin the collection of an assessment
v.32N.Y.S.no.1—7

made on plaintiff's premises situated in the village of Fairport on account of the expense of a sewer constructed in that village.     Complaint dismissed.

Hubbell & McGuire, for plaintiff.
F. S. Randall and W. F. Cogswell, for defendants.

BRADLEY, J.    The charter of the village of Fairport provides that:

"Whenever any new sewer shall be constructed, excepting a sewer in South Main street and excepting a sewer which shall be constructed for the purpose among other things of draining the waters of Robinson swamp (so called), the entire expense thereof shall be assessed upon and paid by the premises deemed by said trustees to be benefited thereby excepting the necessary expense of constructing man-holes and of crossing public streets or parts thereof, which shall be paid by the village." Laws 1881, c. 638, § 45, as amended by Laws 1887, c. 235, § 1.

In the year 1878 a sewer was constructed in West avenue in the village, from Woodland avenue east to a point about 300 feet west of Main street, where it was connected with another sewer extending east into Main street; thence into the canal.    In 1884 there was an extension of the West avenue sewer westerly from Woodland avenue.    This was the situation in 1892, when proceedings were taken for the construction of the sewer in question from Woodland avenue in West avenue east to Main street, and thence in the latter street to the canal.    The contract was let, the sewer was constructed, and to pay the expense of it the assessors were, upon the assumption that it was a new sewer, directed to assess the expense of it, except that of constructing manholes and crossings of public streets, upon the premises benefited by it, and the premises deemed by the trustees so benefited were one tier of lots on each side of West avenue from Main street to the east line of premises owned by Mrs. Harriet Eldridge, one tier of lots on each side of Perrin street from West avenue to Church street, one tier of lots on each side of West street from West avenue to Church street, and one tier of lots on each side of Woodland avenue from West avenue to Church street. The tiers of lots so mentioned were those abutting on such avenues and streets.    The assessment was made by the assessors accordingly, and a list, with warrant annexed, was delivered by the trustees to the collector to collect the assessments. The amount assessed against the plaintiff's premises was $33.41.    The assessment is for several reasons alleged to be illegal and void.    The leading one on the merits is that this is not a new sewer, and therefore the assessment of the expense of it upon the premises deemed benefited by it was without authority.    The sewer put in West avenue in 1878 was an iron pipe nine inches in diameter, and was laid to the depth of about eight feet below the surface.    It failed to supply the means of drainage required.    The sewer in question is an iron pipe fifteen inches in diameter, the bottom of which as laid is about two feet lower than that of the old one.    It was not laid on the line of the old sewer, although in some places the lines of their location may have come together.    It is with much force urged on the part of the

plaintiff that it was the legislative intent to relieve the abutting premises on any street in the village from local assessments for the expense of more than one sewer in such street, and that any sewer afterwards put in the street is not a new one within the meaning of the charter, but should be treated as a repair or enlargement of it. The only limitation or qualification of the power to make local assessments for such improvement, to which my attention has been called, is in the provision before mentioned of the charter of the village. The authority to make such assessment for that purpose is thus confined to a new sewer. And the power to construct new sewers not being, by the terms of the statute, limited to one, may be deemed a continuing power, and may be exercised whenever a new sewer, in the judgment of the municipal authorities, is deemed necessary. 2 Dill. Mun. Corp. 686, 780; In re Opening of Furman Street, 17 Wend. 649, 667; McCormack v. Patchin, 53 Mo. 33; City of Kokomo v. Mahan, 100 Ind. 242; McKevitt v. City of Hoboken, 45 N. J. Law, 482. The trustees, deeming the first sewer unfit for the purpose designed, concluded to construct another one in West avenue, and caused it to be done. It is a new one in the sense that it was created by the use of new and larger pipe, laid deeper, and not in the same place in the street. It makes the sewer larger there, and in that sense it may be said to enlarge the sewer in that street. But yet it is not an enlargement of the old sewer otherwise than by the substitution of a new one. The sewer consisted only of the iron pipe laid in the ground. The nine-inch pipe of the old sewer could not be, and was not, enlarged. The larger sewer consists of another pipe, put into a new and deeper trench, and covered with earth, without any relation to the old one other than its purpose. In common parlance it would be called a new sewer. And if, within the meaning of such provision of the charter, a new one can succeed another in the same street, this must be so treated. There may be reasons for charging the adjacent premises by local assessment for only the first improvement of that character, and it is possible that such limitation was contemplated. But, if that had been the purpose, it could easily have been so expressed as to permit no controversy about the construction of the statute in that respect. The cited case of People v. Brooklyn, 21 Barb. 484, had relation to a local assessment under the charter of the city of Brooklyn, which contained a provision that the common council, under the restriction mentioned, should have power to cause improvements to be made in streets and public squares, and that the expense of all such improvements, except for repairs, should be assessed on the property benefited thereby. Laws 1850, c. 144, tit. 4, § 1. It was there held that the setting of new curbstones and gutters in a street instead of the old ones came within the meaning of repairs, and that for such reason, as well as others, the local assessment was illegal. There the necessity for the substituted curb and gutter had arisen from dilapidation of those previously constructed, and the work there in question was supplied by way of reparation. In the present case the question is not entirely free from doubt. But, as the old sewer had not served the purpose designed, and the recent one was in pipe and structure entirely new,

and substantially different from Woodland avenue to its outlet in the canal, it seems to me that it must be treated as a new sewer to that extent, and not rendered otherwise by the fact that it connected at that avenue with the extension of the nine-inch pipe previously constructed.

The statute provides that, whenever any local assessment shall be necessary, the assessors, when notified by the trustees, shall examine the premises deemed by the trustees to have been benefited by the improvement, and assess the same upon such premises according, in the judgment of the assessors, to the ratio of benefits received. Laws 1887, c. 235, § 1.   It is urged that it was not done in the judgment of the assessors according to such ratio, because, without the distinction which should have been observed by them, they assessed the premises abutting on West avenue at 20 cents and a fraction of a cent per front lineal foot and those upon the other streets included in the local assessment at five cents per front foot, except lots at the corners of those streets and West avenue, which were assessed on such other streets at the nominal sum of one dollar each.   It does not appear that the lots on the respective streets differed in depth, and, if it had, that may not necessarily have required the assessors to distinguish between them in the amount per front foot unless some of them were deemed benefited to greater distance from the street than others by the sewer.   And the fact that a very few of the lots were vacant did not necessarily require the conclusion that the assessors failed to make the assessment according to their judgment, nor will it be assumed that they did not, unless it is made so to appear.   This is not a proceeding to review the assessment, and therefore the question whether they erred in judgment in making it is not here for consideration.   Hoffeld v. City of Buffalo, 130 N. Y. 387, 29 N. E. 747.   The fact that they adopted a uniform sum per front foot on West avenue, and a different and uniform one on the other streets, does not raise the presumption that the assessors failed to make the assessment according, in their judgment, to the ratio of benefits resulting to the premises respectively from the improvement.   In Elwood v. City of Rochester, 43 Hun, 102; Id., 122 N. Y. 229, 25 N. E. 238,—the trouble was that the commissioners, in making the assessment, disregarded the determination and direction of the common council, and proceeded on a basis in violation of such direction.   In People v. Court of Jefferson Co., 55 N. Y. 604, it appeared by the evidence that the apportionment of the assessment was made by the commissioners on an erroneous principle; and it may be observed that, as that was a proceeding taken to review the assessment, it was open to consideration on the merits. Laws 1868, c. 180, § 2.   It is not so in the present case.   Since the assessors had authority to make a special assessment upon the premises included in it, the inquiry as to the apportionment of it is restricted to the question whether it was done according, in their judgment, to the ratio of benefits received; and it may be presumed that they did so, until the contrary is shown.   It does not fairly appear by the evidence that they failed to exercise their judgment with a view to such result of the assessment.

The suggestion that sums unauthorized were included in the assessment does not seem to require the expression of consideration. The contention that it was void for such reason is not sustained by the view taken of the evidence.

It is insisted that the assessment was invalid for the reason that the roll was not completed before the review day, or until afterwards. Notice of time and place for such review was given, and on the grievance day slight changes were made in the number of feet front of a few parcels of the premises. Some few of the entries in that respect had not before that day been entered upon the assessment roll, as distinguished from the assessors' field book. The names of the owners had been inserted in the assessment roll, and in most cases the number of feet front of their premises. The field book was present on that day, and use was made of it in connection with the assessment roll, and by its aid, and with such slight changes, extension of the figures was made upon the assessment roll. The purpose of the notice is to enable persons to appear before the assessors, and have such corrections made as they are entitled to. In the sense requisite to the accomplishment of such purpose, I think, the assessment roll was completed, and the extension upon it for its perfection as it was made was permissible without prejudice to its legality.

It is further urged by the learned counsel for the plaintiff that the assessment is void because it was not properly verified by the oath of the assessors. If this proposition is sustained, the defect is fatal to the assessment as represented by the roll. Brevoort v. City of Brooklyn, 89 N. Y. 128; Shattuck v. Bascom, 105 N. Y. 39, 12 N. E. 283. My attention has been called to no statute, nor have I found any, prescribing an oath or affidavit for the verification of a local assessment by the assessors of the village of Fairport. The roll in question included also a general assessment of the assessable real property in the village and the personal property of its inhabitants to pay the expenses, amounting to about $500, of the sewer, not the subject of local assessment. If that portion of the roll were the subject of consideration, a more serious question would arise than seems to be applicable to the special assessment.

The affidavit annexed to the roll is as follows:

"We, the undersigned, assessors of the village of Fairport, N. Y., depose and affirm that we have set down in the foregoing assessment roll all the personal and real estate, with the estimated value thereof, situated in the said village, according to our best information and judgment."

It was subscribed and sworn to by two of the assessors. This is not a very complete verification of the roll for any purpose. It is insisted that the same oath was requisite to the assessment roll in question as the town assessors are required by statute to add to their rolls. Laws 1885, c. 201. That might be so as to the general assessments in the roll of the village assessors, but no complaint is made of the general assessment, or of the amount of tax extended upon it. This action, as appears by the complaint, is founded solely upon the charge that the local or special assessment is illegal. The town assessor's oath is wholly inapplicable to the local assessment,

upon which alone the question here is presented. Although both are in the same roll, it was not necessary that they should be thus united. And unless some statute which has not come to my attention exists, there is no oath to a local assessment in that village required of the assessors who make it. They nevertheless, in making local assessments, proceed under their official oaths to faithfully perform their duties. It is not seen that the adding to the affidavit the name of the third assessor, who was absent when it was made, has any significance upon the question of the validity of the assessment. The subscription of the roll by two of them in the absence of the other was sufficient. The reasons, if any there were, for signing his name by another assessor, do not require any consideration in the present case. These views lead to the conclusion that the plaintiff is not entitled to relief. The complaint is therefore dismissed.