248    People ex rel. Lehigh Valley Railway Co. v. Burke.

Fourth Department, June, 1927.    [Vol. 221

The People of the State of New York ex rel. Lehigh Valley
Railway Company, Respondent, v. William J. Burke and
Others, as Assessors of the City of Buffalo, Appellants. (Assess-
ment for 1923.)

Fourth Department, June 28, 1927.

Taxation — certiorari to review assessment of unimproved land mostly
under water adjoining Buffalo outer harbor — burden is on relator to
show conclusively that assessment did not represent fair value of
land — relator's evidence failed to sustain burden — action of assessors
approved.

This is a proceeding to review the assessment of unimproved land mostly under
water adjoining Buffalo outer harbor. The burden of proof was on the relator
to show conclusively that the assessment did not represent the fair value of the
land and this burden the relator did not sustain.. The assessment was made
approximately on the basis of $6,000 per acre. The assessors had the right to
take into consideration a valuation fixed by the relator before the Interstate
Commerce Commission at $10,000 per acre and this valuation is not overcome
by the fact that the relator approved a sale of a small parcel of land at $1,000
per acre, since it appears that the cash price fixed for the sale of that parcel
was only a part of the consideration received by the relator therefor. Further-
more, the testimony tended to show that the value of the land in question
ranged from $7,500 to $15,000 per acre or considerably more than the assessment
fixed. Under all the facts, the assessment is not too high.

APPEAL by the defendants, William J. Burke and others, from
a final order of the Supreme Court, made at the Erie Special Term
and entered in the office of the clerk of the county of Erie on the
30th day of August, 1926, reducing an assessment of real estate
for taxing purposes from the sum of $1,378,000 to the sum of
$498,626, and granting relator's motion for $1,000 additional
allowance of costs.

This is a certiorari proceeding under article 13 of the Tax Law
to review an assessment for the year 1923 made by.the assessors
of the city of Buffalo for tax purposes upon 226.725 acres of relator's
land adjoining and within what is known as the Buffalo outer
harbor.

The learned Special Term made an order (confirming a referee's
report and adopting his findings and conclusions) which reduced
the assessment from $1,378,000 to $498,626, and granted respondent
$1,000 additional allowance of costs. Defendants have appealed.
The property involved fronts 5,937.44 feet on the Hamburg turn-
pike, a paved street upon which street cars are operated. The
Lehigh Valley railroad crosses underneath the turnpike through
a viaduct, the sole purpose of which is to furnish to the relator
access to the property in question. The land runs out into Lake

People ex rel. Lehigh Valley Railway Co. v. Burke.    249

App. Div. 248]        Fourth Department, June, 1927.

Erie to what is known as the United States harbor line. A narrow strip along the shore side, about twelve acres in amount, is out of water. The rest of the property is under water to an average depth of 8.6 feet. Excepting a piece of about six acres owned by the Buffalo Marine Construction Company, all the outer harbor in 1923 was owned by railroads or by the city of Buffalo.

Relator introduced testimony of a sale in December, 1924, of thirteen acres off the southerly end of the property to the Stewart Grain Corporation for $1,000 an acre. This sale was two years after the making of the 1923 assessment, and while the trial was under way. It is clear that the referee's total valuation found ($498,626) was based upon a valuation of all the land at $1,000 per acre (the price obtained at the above-mentioned sale) plus the cost to the relator of paving, erecting the viaduct, etc.; for those two sums aggregate exactly the total amount found by the referee.

The improvements made upon the property in question were properly considered in estimating its value. (*People ex rel. Ward v. Sutton*, 186 App. Div. 550; *People ex rel. Niagara Falls Hydraulic P. & M. Co. v. State Tax Comrs.*, 202 N. Y. 426.) The referee found that these expenditures were necessary in order that this property might have uninterrupted rail service, and were chargeable to the property. Thus respondent proved a sale of a small piece of its property at a low specified price while litigation concerning the value of the whole tract was on, when the real consideration was by no means fully measured by the price of $1,000 per acre. The record shows that an important item of the consideration to the railroad was an agreement that the grantee of this small tract would erect a million-bushel grain elevator on the site, failing in which the site and all improvements should revert to the railroad. In addition to this consideration mentioned, the contract of sale contained several provisions, conditions and reservations favorable to relator, none of which are mentioned by the referee in his report or in his opinion. Even relator's witnesses agreed that these provisions in the contract were valuable to the railroad in the production of freight business (" tonnage "). The testimony was damaging, for the referee found that this sale was the only one which relator had made of its land, that it was fairly made, and that the fair market value of the whole tract at the time of making the assessment, outside of expenditures for improvements, was $1,000 per acre.

The referee found that in the six years immediately preceding, relator had been able to find but the one purchaser mentioned. It is apparent that the railroad never named a price at which it

would sell; that it would sell only to a purchaser who would furnish it business; and that there never was a free offer of the property for sale.

In 1923 the relator valued this same property before the Interstate Commerce Commission at $10,000 per acre. The referee received testimony as to this against the objection of relator, but evidently gave little weight to it in his report or his opinion. The Special Term refused defendants' request to find that the relator had made that valuation.

Pursuant to act of Congress, approved March 1, 1913 (37 U. S. Stat. at Large, 701, chap. 92, adding to Interstate Commerce Act [24 id. 386], § 19-a), the Interstate Commerce Commission, in 1914, instituted a valuation of the properties of the relator. The relator employed Malcolm C. Cleveland as its valuation engineer, who, as it appears, represented the company in all such matters, and prepared the reports to the Commission which were due from the Lehigh Valley relative to such valuation. Mr. Cleveland testified that it was his business to obtain from the Commission the highest valuation which he could truthfully obtain on all the Lehigh property. The Interstate Commerce Act (24 U. S. Stat. at Large, 386, § 19-a, subds. 3, 2, as added by 37 id. 701, chap. 92; since revised as § 19-a, subd. b, ¶¶ 3, 2, by Transportation Act of 1920 [41 id. 493], § 433, as amd. by 42 id. 624, chap. 210; now United States Code, tit. 49, § 19-a, subd. b, ¶¶ 3, 2) provides for · the valuation of non-carrier as well as carrier lands of railroads. Mr. Cleveland testified that he presented Fenton M. Parke before the Commission as appraiser for the railroad. He identified Mr. Parke's appraisal of the property, which was received in evidence against the objection of relator. The appraisal placed an average valuation of $10,000 per acre upon the property. The valuation was in writing and was submitted by Mr. Cleveland after he had discussed with the general land and tax agent of relator the possible embarrassment to relator which might result from any inconsistent valuations of the property for taxation as against capitalization purposes. The fact that the estimate was made in 1914 does not make it unimportant. There is no testimony or presumption that the property was less valuable in 1923 or 1924. This valuation is not mentioned in the referee's report or in his opinion.

In valuing railroad corporation property for assessment, the assessors may take into consideration verified reports by the company as to earnings, made as required by law; furthermore, assessors are not required to apply the rigid rules of evidence in investigations before them where assessments are contested. (*People ex rel. Rome, W. & O. R. R. Co.* v. *Hicks,* 105 N. Y. 198.) This same principle

is followed in *People ex rel. Empire Mtge. Co.* v. *Cantor* (190 App. Div. 512, 516). (As to this, see, also, *People ex rel. Ward* v. *Sutton,* 186 App. Div. 550; *Baltimore & O. R. Co.* v. *Flechtner,* 300 Fed. 318.)

The referee admitted testimony as to valuations found in assessments for tax purposes for the previous six years. These assessments were upon not more than 114 acres of this property. From certain statutes and conveyances it appears that relator's first clear title to any of these lands under water dated from the summer of 1921. The testimony as to former assessments is of doubtful competency, certainly of little value. It furnishes merely the opinion of the assessors at various other preceding times, when comparative accompanying and surrounding conditions are not set forth. And it seems to have been influential with the referee.

The relator was permitted to present testimony of the cost of erecting hypothetical structures upon this land, and charts showing the cost of carrying the property for future years. The witnesses presenting this testimony do not seem to have given attention to it as a basis for their conclusion as to value, and if they had, it would furnish a basis entirely too speculative in character. When estimating the present value of such property, or the value of any city vacant land, one always has somewhat in mind the future possible utilization of the land for business or residential or other useful purposes. But after all it is a matter of present value, and the inclusion in such an estimate either of hypothetical or fanciful structures of great cost, or of large possible carrying charges in the future, is unreasonable.

*Frederic C. Rupp, Corporation Counsel [Herbert A. Hickman of* counsel], for the appellants.

*Kenefick, Cooke, Mitchell & Bass [Lyman M. Bass of* counsel], for the respondent.

After making the preceding statement, the court handed down the following:

PER CURIAM. In certiorari proceedings to review taxation assessments, it is presumed that the assessments are correct, and that the assessors did their duty. The burden is on the relator to " make it conclusively appear that the method by which the assessors arrived at the result complained of was incorrect, and that the assessment does not represent the fair value of the property assessed." (*People ex rel. Jamaica W. S. Co.* v. *Tax Comrs.,* 196 N. Y. 39.)

The reference had was to aid the conscience of the court, which may adopt the referee's findings and conclusions, or disregard

them, in whole or in part, and draw its own conclusions and findings. (*People ex rel. Haile* v. *Brundage*, 195 App. Div. 745.) The Special Term passes upon all questions as to the admission of testimony, which are brought into dispute before the referee. Defendants made appropriate motions at Special Term to strike out claimed incompetent and irrelevant testimony admitted by the referee, and all such motions were denied.

The learned Special Term has found, upon consent of the relator, that the property is well protected by the United States government breakwater, and is an ideal site for mills, factories, elevators and other industries desiring water, rail and motor truck facilities. From the referee's findings and from the examination and cross-examination of relator's witnesses (to say nothing of defendants' witnesses) it is clear that relator's lands were as well protected and as accessible to steam railroads and a trolley line, and as well served by them, as any like property similarly situated.

The property was assessed at $1,723,000. This assessment was reduced, after a hearing, to $1,378,000, about $6,000 per acre. The witnesses sworn by relator placed the value of the property at from $100 to $500 per acre. The highest of these valuations was less than one-third of the sum that had been recently expended by relator to acquire the State's title to the portion of the lands lying under water and to improve the property. These witnesses admitted that they did not know of any similar property which could be bought at such a price; and an examination of their testimony reveals insufficient basic information, little knowledge as to other sales of similar property and a general lack of qualification to testify on the subject.

On the other hand, in response to the command of the order that the assessor defendants should certify all the evidence and information which they had in their possession, or which was considered by them in arriving at their valuation, the defendants in their return set up a number of sales of similar lands under water in the outer harbor. These sales were made at from $17,500 to $25,000 per acre. Seven of defendants' witnesses gave convincing testimony as to the location, nature and reasonable future use of this property — and as to its then value. These valuations ran from $7,500 to $15,000 per acre; that of the assessors was $6,000 per acre.

Considering the testimony of defendants' witnesses as to valuation and the basis upon which it rested (actual sales of similar lands similarly circumstanced), the return of the assessors, the basically weak character of the valuation testimony presented by the relator, and the previous admission of relator before the Inter-

state Commerce Commission that this property was worth $10,000 per acre, an admission against interest made by a duly authorized agent (*Stecher Lithographic Co.* v. *Inman,* 175 N. Y. 124), and in view of the improper admission in evidence and consideration by the referee of the testimony as to the sale of thirteen acres of the property at $1,000 per acre in December, 1924 (*Latimer* v. *Burrows,* 163 N. Y. 7), of the testimony as to the assessments for the previous six years, and of the testimony as to cost of future erecting of structures and of future carrying charges, relator has not sustained the burden of proof resting upon it to make it " conclusively appear " that the assessment did not represent the fair value of the property assessed.   Therefore, the orders appealed from should be reversed upon the law and facts, and the amended valuation made by the assessors reinstated.   Certain findings of fact and conclusions of law are disapproved and reversed, and new findings and conclusions made.

All concur.   Present — CLARK, SEARS, CROUCH, TAYLOR and SAWYER, JJ.

Order reversed on the law and facts, with costs, and amended valuation made by assessors reinstated.   Certain findings of fact and conclusions of law disapproved and reversed, and new findings and conclusions made.