In the Matter of A. R. HASKELL et al., Respondents, against HOWARD J. FISK et al., Constituting the Town Board of the Town of Ellicott, Appellants.

Fourth Department, December 31, 1947.

154

*Ernest D. Leet,* attorney (*C. Rex Crosby* of counsel), for appellants.

*Rollin A. Fancher* for respondents.

HARRIS, J. Appeal is here taken from a decree by an Official Referee, which decree was in favor of the petitioners (now respondents) and adjudged that certain sewer district assess-

ments for the years 1943–1944 were illegal and void, and directed that the petitioners be reimbursed by the Town Board of the Town of Ellicott (now appellant) for payment made on account of such assessments.

The proceeding was brought by seventy-eight property owners living in Sewer District No. 3, in the town of Ellicott. In 1939, property owners in that territory now comprising the sewer district, in the number required by law, petitioned the Town Board of Ellicott requesting that the sewer district be formed. After the necessary other legal steps were taken, the district was formed. A plan was made for a sewer system that would serve all of the parcels of land in the district. The plan was for the construction of trunk sewers, lateral sewers connecting with the individual parcels of property, and the connection of the system with the sewage disposal plant owned by and located in the adjacent village of Celoron. Previous to the organization of the sewer district, unsanitary conditions existed in that territory because (with other reasons) of poor drainage and the overflowing of septic tanks. The total number of houses in the district was 402. For the construction and the purchase of rights in the sewage disposal plant in Celeron, the sum of $120,000 was furnished by the Town of Ellicott, the money being raised by an authorized bond issue; further funds were furnished by the Federal Work Projects Administration. It was anticipated that certain other funds would be provided by the Federal Government and its instrumentalities, but, due to the tapering off of Federal help, such other funds have not been available since November, 1943. In November, 1943, over 50% of the work for which plans had been made was completed and 236 houses were given access to the sewers; 166 houses at the time of the laying of this assessment were from 500 feet to more than a mile from the sewer connections. Of the $120,000 raised by the Town of Ellicott, there is still remaining the amount of $5,000 invested in machinery, and some $11,000 in funds. With the work so far progressed and in the financial situation just stated, it became impossible at that time for the town board to finish the construction. Unavailing efforts were made to get aid from New York State. It was in this status of the matter that the assessment under attack was laid. The assessment was for the purpose of paying the annual proportion due on the bonds (which were for a period of thirty years payable in equal annual installments) and the annual interest thereon, and for the maintenance of the system. In laying the assessment the taxing authorities placed against each of the

properties not accessible to the sewer system (such nonaccessibility being due to the stoppage of work) one half of the amount assessed against each of the properties which had received sewer connections. During the time of the construction of the sewers (1940–1943) the assessments laid against the petitioners' properties were paid. To avoid paying future assessments the petitioners brought this proceeding.

On the trial, the Official Referee held that there was no benefit from the project for the petitioners and their properties and that, therefore, the assessment as laid was illegal, the assessment should be cancelled, and the amount already paid thereon refunded, and the town board enjoined from collecting any further rental or assessments from those owners without sewers until sewers were available to those parcels of property.

The testimony before the Official Referee, in addition to what is above stated, can be briefly summarized as follows: On behalf of the petitioners, proof was afforded of a lack of connections and the opinion of witnesses that the carrying out of the plans had brought no benefit to the petitioners nor to those in the district in like situation. Witnesses for the town gave testimony that unsanitary conditions had been cleared up in some parts of the district; the connections with the Celeron system had been made and were working; all of the trunk sewers were completed; further, on behalf of the town, opinion testimony was given that the parcels in the district not connected with the sewers did have benefit from the elimination of unsanitary conditions and from the general construction. There is no proof to sustain a finding of abandonment. The annulment of the assessment was solely on the ground that the properties of the petitioners had no benefit from the project and construction of the sewer.

In order to sustain the assessment, it is necessary that there be a benefit in the way of enhancement of value to the premises involved. This conclusion is based on the language contained in sections 202 and 202-a of the Town Law, which sections (as in effect when the bonds were authorized and issued), insofar as pertinent herein, are quoted as follows:

Section 202. " 2. The expense of constructing every trunk sewer or drainage system in a district created pursuant to section one hundred ninety and for lateral sewers, drains and water mains constructed pursuant to section one hundred ninety-nine, and for street improvements constructed pursuant to section two hundred shall be borne by local assessment upon the several lots and parcels of lands which the town board shall

determine and specify to be especially benefited by the improvement, and the town board shall apportion and assess upon and collect from the several lots and parcels of land so deemed benefited, so much upon each as shall be in just proportion to the amount of benefit which the improvement shall confer upon the same.''

Section 202-a. '' 2. If the cost of such improvement is required by section two hundred two to be apportioned and assessed upon such lots or parcels of land in proportion to the amount of benefit which the improvement shall confer upon the same, the cost of maintenance of such improvement shall be apportioned and assessed in like manner.''

Both appellant and respondents cite a number of cases as bearing out, each oné, its individual argument. Among these cases are *People ex rel. Delaware, Lackawanna & Western R. R. Co.* v. *Wildy* (262 N. Y. 109), *People ex rel. New York Central R. R. Co.* v. *Limburg* (283 N. Y. 344), *People ex rel. Lehigh Valley Ry. Co.* v. *Burke* (221 App. Div. 248, later reversed on other grounds, 247 N. Y. 227), *Norwood* v. *Baker* (172 U. S. 269), and *Furgoson* v. *Stebbins* (177 Misc. 498). It is interesting to note the cases cited all have to do with completed works, so at the time of the decision in each of such cases the court had before it the complete picture of the work, its use and its results; while here there is before the court the picture only of what is apparently an uncompleted project. However, there can be no doubt that the assessment is regular only if the assessed parcel of property is benefited in the sense above stated. There is the strongest presumption that the assessment was regular and legal (*People ex rel. New York Central R. R. Co.* v. *Limburg,* 283 N. Y. 344; *People ex rel. Lehigh Valley Ry. Co.* v. *Burke,* 221 App. Div. 248, later reversed on other grounds, 247 N. Y. 227); if this presumption did not exist, the laying and collection of assessments would be in a chaotic condition. In the proceeding now under review, there was not only this presumption of regularity, but definite proof that the Sewer District No. 3 was organized by its property owners and the project put under construction for the purpose of cleaning up certain unsanitary conditions in the sewer district territory and that there was a substantial clearing up of such unsanitary conditions in the construction of the trunk sewers and their connections with the disposal plant. A court should not say that these factors did not show a benefit of enhancing value to each parcel of property (although varying with each parcel) in the entire territory of the sewer district, unless the proof

presented by the petitioners outweighed that just discussed. Such weight does not lie with the petitioners on this record. It may be that proof is available that sustains a finding of abandonment of the project in its present state, and such finding of abandonment might sustain a finding of lack of benefit to specific parcels of property in the future.

Attention of the court has been drawn to the passage by the Legislature of a statute apparently intended to afford means of continuing the construction of the sewer as originally planned. (L. 1947, ch. 651.) By·such statute, the Town of Ellicott is authorized to increase the funds available for the cost of construction in district No. 3; the order for such increase to be made after a public hearing and a determination that it is in the public interest to authorize such increase. Action under such statute may solve the problems of the parties.

There is one phase of the problem and situation herein that deserves further discussion. It is apparent from the testimony that the town board used an arbitrary figure in determining the amount of benefit to each piece of property not at present connected with the sewer system, such method resulting in a flat charge of one half of the amount of the assessment to each of such pieces as compared to a piece of property already connected with the system. The variance in distance of certain parcels of property in the unconnected portion of the district, as compared to the distance of other parcels in such portion, could have some bearing on the amount of assessment. (See *Ferguson* v. *Stebbins,* 177 Misc. 498; *Matter of Seyfang* v. *Reister,* 154 Misc. 308.) For these reasons and in view of the enactment of chapter 651 of the Laws of 1947, the question of the rule of thumb to be used in laying the assessment of 1943–1944 should again be brought before the assessing authority; the same reasons could have bearing on future assessments after the tax year 1943–1944. In view of this, the decree from which appeal has been taken should be reversed, on the law, with costs and the entire matter remitted to the Town Board of the Town of Ellicott to reconsider the question of the assessment under attack in the light of the contents of this opinion.

LARKIN, J. (concurring in result). I concur in the result as far as the order appealed from is concerned.

I conclude that petitioners are properly taxable for their respective shares of the cost of the main or trunk sewer system, but not for lateral sewers not accessible to or adjoining their respective properties.

The Town Law contemplates the construction of a general system of trunk sewers at the expense of the entire community embraced in the sewer district. While it is not specifically or definitely so stated, it is patent from the provisions of sections 190, 191, 191-a, and particularly section 192, which reads in part: " If a sewer or drainage district is proposed, such map shall show all outlets and the terminus, course and a profile of each *proposed main sewer* or drain together with the location and general description of all *sewage disposal plants, pumping stations* and other public works, if any." (Italics supplied.)

On the other hand, section 199 provides: " Whenever a sewer * * * district shall have been established * * * *and a trunk system* of sewers * * * *shall have been constructed* * * * *or contracted for,* the owners of the real estate fronting * * * upon * * * any street * * * may petition the town board in writing for the construction of a lateral sewer * * * ". (Italics supplied.)

By section 202-a the expense of the construction of trunk sewers is to be paid by local assessments upon the lands benefited by the improvement. The same section applies to lateral sewers.

In each instance the town board is to hold a meeting for hearing objections, must decide that the improvement shall be made, approve the plans and award a contract for the construction.

Section 197 provides for the physical construction of general improvements, including a trunk sewer system.

Section 199 provides for a separate proceeding of the same kind with regard to lateral sewers.

As far as can be determined by the record in this case these provisions were not followed. It appears that the original petition, and the proceedings thereon, provided for a complete sewer system, including both a trunk system and lateral sewers for the whole district with one plan, one estimate of cost and one bond issue.

It appears that the trunk sewer system has been substantially completed. Lateral sewers have been constructed in certain areas and not in others. No assessments of the whole cost of either the trunk sewer system or of the different lateral sewers seem to have been made, advertised or reviewed, as provided by subdivision 1 of section 231, but the board elected to proceed under subdivision 2 of that section.

The latter provides that the board may, upon the completion of the improvement *or at any time prior thereto,* estimate the

entire cost of *the improvement* (not exceeding the amount estimated in the petition), issue bonds for such amount and annually assess " an amount sufficient to pay the principal and interest of such bonds as the same shall become due " and also the cost of maintenance.

But this provision does not permit the merger of trunk and lateral sewers in one general assessment. It relates to the " completion of the improvement ". Those words clearly relate to the different kinds of improvements elsewhere provided for in the law. It does not dispense with the necessity of a separate petition for each lateral sewer nor permit the assessment of the cost of lateral sewers upon or against premises not adjoining the streets in which they are constructed. It does not dispense with the proceedings for determining the cost of each improvement separately. It contemplates a separate estimate for each " improvement ". That, of necessity, means for the trunk sewer system as one " improvement ", and each lateral sewer as a separate " improvement ".

I agree with the opinion with regard to the " rule of thumb " method by which the benefits were determined. The method used does not appear to have any reasonable relation to the benefits but to have been based upon a preliminary estimate showing what each taxpayer would be charged if the whole system, both trunk and laterals, should be constructed within the original estimate of cost of the whole project including both kinds. That estimate does not appear to have had any relation to benefits.

The provision in the order appealed from for restitution was possibly warranted by section 1300 of the Civil Practice Act, but this proceeding was not brought to review those particular assessments. However, if the order appealed from is reversed, the taxes already paid should be credited by the town board upon the reassessment to be made.

The order should, in my opinion, be reversed with directions to determine the cost of the trunk sewer system (disposal plant, etc.) separately and to assess the cost thereof upon all the lands in the district according to the respective benefits resulting therefrom upon some reasonable basis and to assess the cost of the respective lateral sewers against the lands adjoining the streets in which constructed. No proceedings seem to have been taken in that regard. For the purpose of this appeal the assessment against these relators should be confined to the cost of the trunk sewer system only. Any questions that may arise with regard to lateral sewers will have to be met if and when

they arise. This court cannot make the reassessments in that regard.

All concur with HARRIS, J., LARKIN, J., in result only, in a separate opinion. Present — HARRIS, McCURN, LARKIN and LOVE, JJ.

Order reversed on the law, with costs and matter remitted to the Town Board of the Town of Ellicott to proceed in accordance with the opinion by HARRIS, J. [See *post*, p. 1056.]