Thomas C. Chimera, J.
Motion by plaintiffs for an order striking out defendant’s answer and directing entry of judgment. Defendant cross-moves for summary judgment dismissing plaintiffs’ complaint.
The complaint sets forth five separate causes of action in behalf of five separate plaintiffs, all of whom, with the exception of plaintiff Dench, have paid under protest certain bills of assessment levied against their respective properties by defendant. Plaintiff Dench has continuously refused to pay the bill applicable to his property. It seeks judgment in favor of those paying under protest, for the amountsvpaid with interest, and in favor of all plaintiffs — adjudging the questioned assessments null and void and canceling same of record, all with costs and disbursements.
Defendant’s answer denies generally all of the material allegations of the complaint except that it admits the payment of the assessments under protest by all of the plaintiffs except plaintiff Dench. By way of affirmative defense, defendant alleges that in December, 1903, the Board of Estimate voted funds for the construction of a 15-inch sewer pipe (constructed in 1910), without an assessment being levied against the subject properties deemed benefited thereby; that by resolution dated. November *608 16,1939 the Board of Estimate adopted certain rules for apportioning the costs of assessable physical improvements; that on March 25, 1954 the Board of Estimate approved a resolution that the combined sewer in question be reconstructed charging one third of the cost to the city, assessing the entire remaining costs upon the subject properties deemed benefited thereby; that the Board of Estimate was authorized to, and in fact did levy assessments against said properties for which no previous assessment had been levied.
Defendant’s position is (1), that there was a reconstruction and replacement of a sewer which had completely deteriorated, the original cost of which was paid wholly by the city, and that such reconstruction is an assessable improvement; (2), that the proceedings for construction of said improvement and the assessments levied were had according to law and constitute legislative and administrative determinations which are conclusive on the court and not subject to judicial review, and finally (3), that plaintiffs have neither availed themselves of, nor exhausted all of their remedies under the provisions of the New York City Charter and the Administrative Code.
Defendant’s arguments and authorities addressed to its second and third contentions, so briefly above outlined, are neither impressive nor pertinent to the determination of this motion, for, it is clear that plaintiffs do not claim fraud or substantial error on the part of defendant in arriving at assessments for assessable improvements which the latter was lawfully empowered to impose.
Plaintiffs bottom their entire case on the simple proposition that the laws creating the sewer rent fund, chapter 765 of the Laws of 1951, were intended and designed to change the basis for handling the cost of maintaining and improving its sewers by substituting a charge or rent based on water consumption with due regard to equitable considerations, for the theretofore long-prevailing practice of financing sewer upkeep largely from property taxes and paying for improvements with special assessments. Their position, simply stated, is that the defendant’s actions in imposing the critical levies on plaintiffs’ properties were contrary to law and without jurisdiction.
If plaintiffs’ interpretation of the Sewer Bent Law is correct, then defendant’s actions are void ab initio and an action in the nature of a proceeding for equitable relief to remove a cloud on title, such as this is, is proper and authorized. (Cooper Union v. City of New York, 272 App. Div. 438, 440; Matter of City of New York [Woodhaven Blvd.-Queens], 260 App. Div. 659, 661.) *609 It is not disputed that' plaintiff s’ properties have been subject to the sewer tax since the effective date of the Sewer Bent Law.
In the opinion of this court there is enough in the spirit of the statute and its pertinent language, buttressed by respected judicial authority (Black v. General Wiper Supply Co., 305 N. Y. 386), to justify plaintiffs’ interpretation.
The clue to the underlying purpose of the statute may be found in the clear directive of the Legislature in its guide lines for the use of the sewer rent fund authorized — for what the fund may and may not be used!
Section 453 of the General Municipal Law, entitled Sewer Rent Fund, insofar as pertinent, reads as follows:
1‘ Revenues derived from sewer rents * * * shall be credited to a special fund * * *. Moneys in such fund shall be used in the following order:
“ 1. For the payment of the costs of operation, maintenance and repairs of the sewer system or such part or parts thereof for which sewer rents have been established and imposed. ■ * # *
“3. * * * for the extension, enlargement, or replacement of, or additions to, such sewer systems, or part or parts thereof.
“Such revenues from sewer rents shall not be used (1) to finance the cost of any extension of any part of a sewer system * * * to serve unsewered areas if such part has been constructed wholly or partly at the expense of real property especially benefited ”. (Emphasis supplied.)
Subdivision 2 of section 451 defines ‘ ‘ Sewer system ”: “ All sewer pipes and other appurtenances which are used or useful in whole or in part in connection with the collection, treatment or disposal of sewage, industrial waste and other wastes and which are owned, operated or maintained by a city or village or sewer district in a county or town ’ ’.
Subdivision 3 defines “Part”: “all lateral sewers, or all branch sewers, or all interceptor sewers, or all trunk sewers * * * each part with necessary appurtenances ’ ’.
Black {supra) was a summary proceeding in which the resolution of that controversy turned upon the construction of a lease for the purpose among others of determining whether a landlord could recover from the tenant sewer rents, levied against the premises and paid by the former. In determining whether these charges were of a character so foreign and improbable as to be beyond the contemplation of the parties, the lease having failed to mention sewer rents, the Court of Appeals speaking through Fuld, J., embarked on an exhaustive and illuminating historical exposition of the whole subject of the Sewer Rent Law, in the *610 course of which the learned Judge came to grips with the very problem confronting this court with remarkable clarity and emphasis (p. 392) :
‘1 Instead of continuing to finance sewer upkeep largely from property taxes and paying for improvements with special assessments, the municipality adopted this charge or rent to maintain and improve the sewage disposal system.”
“Be that as it may, it seems clear that the sewer charges pay for the same services that were previously financed by local benefit assessments and, in large part, by property taxes. * * * In point of fact, soon after the sewer rent law was enacted, many assessments for sewer improvements — already authorized — were actually cancelled, since the ‘ cost and expenses of each of the improvements * * * shall be financed by sewer rents ’. (See, e.g., Administrative Code, § B41-95.5, subd. c; § B41-95.51, subd. b) ” (p. 393).

Need anything more be said!

Plaintiffs’ motion is granted and defendant’s cross motion accordingly denied.