Burke, J.
In this article 78 proceeding, we are asked to determine whether “ special assessments ” against petitioners’ properties for a sewer project in the northeast Bronx were properly vacated by the courts below.
The issues raised by the petition were whether work done by the city as part of the so-called Conner Street Sewer Project in the northeast Bronx, to the extent relevant to the petitioners, constituted nonassessable repair and maintenance chargeable to the city’s sewer fund or, in the alternative, to the extent that it was a qapital improvement, e.g., replacement with larger pipe of an increased capacity, whether petitioners were benefited by the improvement and thus subject to the assessments. In addition, there was in issue the timeliness of the assessments some five years after completion of the last phase in 1964. Special Term resolved the issues in favor of the petitioners.
The affirmance of the Appellate Division should be reversed and the petition dismissed. There is a presumption of validity to the assessments requiring petitioners to show by affirmative proof that they have not benefited from the improvement or that it is nonassessable in the first instance. Petitioners have not met this burden and the determination in their favor below, unsupported by any proof, rests, therefore, on an erroneous standard.
The Conner Street Sewer Project encompasses a 16-year sewerage program over a wide area of the northeast Bronx, a primarily residential area, during a period of sustained growth in population and the consequent utilization of available vacant land. The project involved a total of 46 contracts covering various phases of the program including 39 contracts for lateral sewers, initiated by petition of local property owners, and an additional 7 contracts, initiated by the borough president, for *94 the construction of trunk lines into which the lateral sewers discharge. The first contract authorized by the Board Of Estimate was dated March 4, 1948 for construction of a storm water relief sewer on East Tremont Avenue and Eastchester Boad, the southernmost portion of the area covered by the project. It was completed April 17, 1950. The last contract, also a trunk line, was approved September 22, 1961 and the work completed July 15, 1964 covering the reconstruction of á combined relief sewer.
The total cost of the work was $11,281,065.95 of which $2,806,458.53 represented the cost of lateral sewers and $8,474,607.42 the cost of the trunk lines. Of the total, $3,202,-509.30, representing approximately 28%, was assessed against 22,875 parcels of property benefited by the work. The special assessment total included $2,041,622.69 for trunk line costs, an “indirect benefit”, and $1,160,806.61 was for lateral sewer costs, a “direct benefit”. The assessments were on an individual parcel basis depending on the type of benefit involved.
Petitioners, totaling 561 owners of property assessed on an “ indirect benefit ” basis, reside in the area south of Gun Hill Boad. The latter runs in a generally east-west direction through the middle of the project area. That portion, south of Gun Hill Boad, was the site of most of the trunk line work and hence bore the major portion of the total cost of the project. The trunk lines form a largely interconnected pattern running north from the point where the first contract was authorized. In contrast, the work done north of Gun Hill Boad, consisting primarily of lateral sewers, is an unconnected patchwork over a wide area extending north to near the New York City-Westchester line.
Petitioners’ grievances are set against a background of statutory changes which have further increased their wrath over the special assessments levied against them. In 1963, the provision of the Administrative Code authorizing special assessments against local property owners was repealed (L. 1963, ch. 100, §§ 211, 212) save for projects authorized prior to January 1, 1962 which were not affected by the repeal (New York City Charter, § 1149 [1 Williams, 1963 ed., p. 318]). The 1963 charter thus spread the costs of assessable improvements on a city-wide basis for projects authorized after January 1, 1962. *95 The change, of course, did not apply to the Conner Street Project since all authorizations had been obtained prior thereto but the assessments coming some six years after the repealer provision and five years after completion of the project were not calculated to ease the impact on those involved. That feeling pervaded the public hearings held to hear objections to the assessments and included the request of a representative of the then borough president that the assessments be levied against the entire borough. The city, for its part, points out that almost $200,000,000 in assessments are pending for work authorized prior to January 1, 1962, and contends the provisions of the 1938 code governing local assessments continue applicable.
Under the statutory scheme of the 1938 code following completion and acceptance of the work authorized by the Board of Estimate, the Bureau of Assessors made tentative assessments against the benefited parcels subject to confirmation after a public hearing on objections, and review, if local owners affected request, by the Board of Revision of Assessments (1938 Administrative Code, § 309-1.0 [2 Williams, 1957 ed., p. 253]). Ordinarily, affirmance of the tentative assessment with respect to individual parcels is final and not subject to judicial review (Matter of Cruger, 84 N. Y. 619, 621; O’Reilley v. City of Kingston, 114 N. Y. 439, 447, 448). However, section 311-2.0 provided for judicial review for “ fraud or substantial error ” to the extent that the total assessment exceeds the fair value of the improvements (2 Williams, 1957 ed., p. 255; see, also, 55 N. Y. Jur., Special Assessments, §§ 373, 374). Beyond this, review i,s limited to the assessing authorities’ jurisdiction to levy the assessments as, for example, where it is alleged that the improvement did not benefit the parcel (People ex rel. Delaware L. & W. R. R. Co. v. Wildy, 262 N. Y. 109, 111; People ex rel. New York Cent. R. R. Co. v. Limburg, 283 N. Y. 344, 347; Matter of Haskell v. Fisk, 273 App. Div. 153, 157), benefit defined as an increase in the value of the property resulting from the improvement (People ex rel. Delaware L. & W. R. R. Co. v. Wildy, supra; People ex rel. New York Cent. R. R. Co. v. Limburg, supra; Matter of Haskell v. Fisk, supra). There is a reluctance on the part of the courts to interfere with a determination of the assessing authority given the attendant difficulties of the review *96 (55 N. Y, Jur., Special Assessments, § 378). The result is to furnish a presumption in favor of its validity (Garratt v. Trustees of Canandaigua, 135 N. Y. 436; County of Monroe v. City of Rochester, 154 N. Y. 570; New York Cent. & H. R. R. R. Co. v. City of Yonkers, 238 N. Y. 165, 177) and qast the burden on the objectants to overcome the presumption by affirmative proof (Tingue v. Village of Port Chester, 101 N. Y. 294, 299-300; Matter of Brewster-Mill Park Realty v. Town Bd., 17 A D 2d 467, 468; Matter of Amundson Ave. 8ewer, Mt. Vernon, 24 Misc 2d 618, 623, 624).
Petitioners, in this proceeding, have not met their burden of proof. Special Term in concluding that “Jit has not been demonstrated that the Conner Street Project in any way benefited the petitioners’ properties ” overlooked this presumption of validity in favor of the city and thus based its determination on an erroneous standard. In addition, the conclusion that the ‘ ‘ improvement is in fact a repair of existing sewer systems ” is unsupported by any evidence in the record as is the conclusion that ‘ ‘ no direct or indirect benefit accrued to them [petitioners] ”. Petitioners’ affidavit makes clear that the reason for the failure of proof was their inability to determine whether the work was assessable improvements or nonassessable repair and maintenance. There was, therefore, no basis for attacking the jurisdiction of the assessing authority. The deficiency in the proof was not remedied by the submission on behalf of the city. This is in contrast to the situation in Matter of Kane v. City of New York (51 Misc 2d 587) wherein an assessment against a property owner for the installation of a sewer in 1965, abutting but not serving his property, was set aside as arbitrary and unreasonable. Petitioner conceded that he was served by an existing sewer since 1929 though he had not been assessed for it. The presumed validity of the assessment was overcome by the city’s admission that the 1965 assessment, though nonbeneficial to petitioner, was made to remedy the earlier omitted assessment.
The failure of proof is also evident in petitioners’ contention that the term “reconstruction”, the job description for three of the seven trunk line contracts, may be equated with repair and maintenance. The resolution of the Board of Estimate (Cal. No. 14, Sept. 22, 1961 [Board of Estimate, Journal *97 of Proceedings, Vol. X 11194, at p. 11195]), with respect to the final reconstruction contract, makes clear that the original sewers were to be replaced with pipes of a larger capacity. Presumably, and the petitioners have not shown otherwise, the remaining two reconstruction contracts were for the same purpose. Since the replacement with pipes of an enlarged capacity may constitute an assessable improvement (1938 New York City Charter, § 300, subd. c; Rule 10 [Cal. No. 12, Dec. 18,1958] ; Denise v. Village of Fairport, 11 Misc. 199, 202), the burden is on the petitioners to show that it is nonassessable. Reliance by petitioners on Riverview Estates v. City of New York (38 Misc 2d 607, affd. 20 A D 2d 890, affd. 16 N Y 2d 701) is misplaced. In Riverview summary judgment was granted to the plaintiffs on the ground that the work was nonassessable repair and maintenance and not reconstruction work as contended by the city. The Appellate ^Division found that the city’s allegation raised no triable issue of fact and implicitly that plaintiffs had met their burden and contention that it was repair of leaking conditions in an existing sewer. In contrast, in the instant case, the city has introduced the resolution of the Board of Estimate that the reconstruction work involved assessable improvements while petitioners have not advanced any factual proof of their view and indeed have conceded lack of specific knowledge of the work involved.
Petitioners also contend that they were denied due process of law by the manner in which the statutory hearings were conducted. Following completion of the work, notice of the proposed assessments was sent to the property owners affected and a public hearing was held following the filing of objections. Six thousand written objections were filed and 1,500 people attended the hearing at which numerous public officials and representatives of protesting groups testified against the assessments. For the sake of convenience and because it was the first street mentioned in the Notice of Assessment, the project was called the Conner Street Sewer Project. The choice, with the benefit of hindsight, was an unfortunate one since the project covered a wide area and a number of streets subject to diverse assessments. Unfortunate because Conner Street lies at the northernmost point of the project area just west of the vast Co-Op City complex and resulted in the conclusion being *98 drawn by various speakers at the public hearings that the work was intended to cover the sewerage needs of the complex. This conclusion, the nub of petitioners’ contention that they were not, therefore, benefited by the improvement, was unsupported by any documentation. Indeed, it is unlikely that documentation could be advanced for this theory since the various trunk line projects south of Gun Hill Road were approved long before plans were made known for the Co-Op City complex. More likely, is the view that it was done in anticipation of the general growth of the area and in response to the then evident drainage problems caused by inadequate sewer lines. The association with Co-Op City is an understandable one given the long delay between the start of the project and the assessments in 1969 during which time Co-Op City had become a reality. The hearings, in response to the objections, at which Nolan himself testified, nonetheless, afforded adequate opportunity to be heard and to present evidence against the assessments.
Finally, petitioners contend that the five-year delay in making the assessments, following completion of the work, is unreasonable. Similar delays of 3% and 6 years have been upheld, however, in People ex rel. Schick v. Marvin (249 App. Div. 293, affd. 275 N. Y. 587) and Matter of Ploss v. Board of Assessors (17 Misc 2d 283, 284). The applicable section of the charter (§ 306, subd. 3) stated that the assessments be made within one year ‘ ‘ if practicable ’ ’, clearly implying that this is not a mandatory provision (Matter of Ploss v. Board of Assessors, 17 Misc 2d 283, supra). A delay of five years to assess more than 22,000 parcels over a wide area and for varying amounts is, under the circumstances, not unreasonable.
Accordingly, the order of the Appellate Division is reversed and the petition dismissed.
Chief Judge Fuld and Judges Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order reversed, without costs, and petition dismissed.