(23 Misc. Rep. 21.)

McKEE LAND & IMPROVEMENT CO. OF ROCHESTER v. SWIKEHARD et al.

(Supreme Court, Special Term, Monroe County.   March, 1898.)

1. ASSESSMENTS FOR SEWERS—HOW PROPORTIONED AND ADJUDGED.
   The validity of an assessment on certain property for the construction of a sewer must be considered on its own merits, and not according to another assessment, made some time before, when it was proposed to construct the sewer over a different territory.

2. SAME—DIVISION OF ASSESSMENTS BETWEEN DIFFERENT KINDS OF PROPERTY.
   The judgment of commissioners appointed by statute to make an assessment on the property benefited by a trunk sewer, assessing the territory which had immediate need of it, and could make use of it at once, a sum sufficient to pay for a sewer for its own use, and assessing the more remote territory, which could be connected with only by lateral sewers, such sum as would pay for the enlargement of the sewer made necessary to meet its requirements, will not be disturbed as unfair, or not conducive to equality of apportionment.

3. SAME—COLLATERAL ATTACK.
   An assessment cannot be collaterally attacked for alleged error of the commissioners in estimating the amount without showing such error was due to the application of an erroneous rule of law or principle, since the proper remedy for such mistakes is a direct proceeding of certiorari.

4. SAME—EQUALITY OF PROPORTION.
   The fact that there was a wide variation in the assessment of two adjoining blocks, similarly situated and improved, for the construction of a trunk sewer, which could be connected with only by lateral sewers, does not show an unfair assessment, where it appeared that the one block, on account of its slope, was to be connected with the trunk sewer at a different point, and thereby would have to assist in building a much greater amount of lateral sewer than the other block.

5. STATUTES—REPEAL BY MISTAKE.
   A statute reciting by mistake that it repeals another statute relating to an entirely different subject, does not effect a repeal of the statute thus mentioned.

6. SAME—HOW CONSTRUED.
   Where the meaning and intendment of a statute is plain in view of all the circumstances, they will control verbal inaccuracies.

7. PROPERTY ASSESSABLE FOR SEWERS.
   Land laid out for city lots, but not occupied, may be assessed for the construction of a trunk sewer, even though it is not on the direct route of such sewer, and the benefits are purely speculative.

8. IMPROPER STATEMENTS OF COMMISSIONERS—WHEN PREJUDICIAL.

Improper remarks of a commissioner to assess property for the construc-
tion of a sewer, in regard to assessing certain of the property, but not shown
to have affected the action of any other member of the commission, are not
prejudicial to the owner of such property.

Action in equity by the McKee Land & Improvement Company of
Rochester, N. Y., against George B. Swikehard and others, as com-
missioners of sewerage for the Tenth, Fifteenth, and Twentieth
wards of the city of Rochester and town of Gates, to set aside and
restrain the collection of an assessment on plaintiff's lands for local
improvement.    Dismissed.

William Butler Crittenden and John Van Voorhis, for plaintiff.
William F. Cogswell and Charles J. Bissell, for defendants.

DUNWELL, J.    This is an action in equity, brought to set aside
and restrain the collection of an assessment upon plaintiff's lands,
situate in the town of Gates, in close proximity to the city of Roch-
ester, for a local improvement known as the "West Side Sewer."
The course of the sewer is from a point in the town of Gates, a
short distance from the western line of the city, northeasterly into
the city and through a portion of the western part thereof, to the
outlet of the sewer into the Genesee river.    The drainage area
within the route of the sewer is computed at 6,556.49 acres.    The
sewer commission decided that 3,625.29 acres of this drainage area
was benefited by the sewer, and consequently assessed it.    Of this
number of acres adjudged to be benefited 1,044 are within the city
of Rochester and 2,581 in the town of Gates.    The assessment pla-
ced upon lands in Gates was $302,874, and in Rochester $299,728;
a total assessment of $602,602.    Plaintiff's tract, consisting of
224.49 acres, was assessed as follows:    Seventy-three hundredths of
an acre at $385 per acre, 6.76 acres at $200 per acre, 85 acres at
$150 per acre, and 132 acres at $75 per acre; a total assessment of
$24,283.05.    Plaintiff feels aggrieved at what it asserts to be an
inequality in the assessment, and which, it alleges, imposes a dis-
proportionately greater share of the expense upon its lands than
upon premises of other property owners whose lands are similarly
situated or more favorably situated to receive the benefits of the
sewer.    If this were the only allegation against the assessment, a
consideration of defendants' objection that the assessment is not
subject to a collateral attack by action, but only upon direct review
within the proceeding itself by certiorari, might dispose of the case
without rendering further examination necessary.    But the com-
plaint and testimony raise other questions attacking the acts of the
commissioners as unauthorized, and their whole manner of assess-
ment as illegal, which will require a careful examination of all the
acts of the commission and the history of the whole case.    The
project for the sewer is comprised within several acts of the legis-
lature, the purpose of which is the construction of a trunk sewer
for a large district on the west side of the Genesee river in the city
of Rochester and town of Gates.    This was to be done under the
direction of commissioners, who were also to make an assessment

upon local property owners near the route of the sewer, for its costs.

The first act (chapter 603, Laws 1892) provided that the sewer should begin upon the Buffalo road, at Field street. Under this act, the commission, consisting of three members, Horace Pierce, George B. Swikehard, and Frank S. Upton, organized and proceeded with the work. They appointed an engineer, William E. Crane, who surveyed and made maps and plans for the work. They let the contract, and made an assessment, which was completed July 31, 1893. Considerable work upon the construction of the sewer was done under Crane's supervision as engineer. The second act (chapter 55, Laws 1893) provided for an addition to the sewer further south, to take in an additional district of considerable extent. It provided for proceedings relating to the construction of the addition only, treating it as a separate work. The third act (chapter 438, Laws 1895) went into effect April 26, 1895, as an amendment to chapter 603, Laws 1892. It provided for two additional commissioners from the town of Gates. It empowered the commissioners to make a new assessment, vacated the one already made, and otherwise considerably enlarged the powers of the commissioners. The fourth act (chapter 744, Laws 1895) went into effect May 23, 1895. It repealed chapter 55, Laws 1893, which had provided for the extension of the sewer as a separate work, and empowered the commission to extend the sewer under construction to a point on or near the Chili road, and to make such change in the dimensions and limited changes in the route of the sewer as seemed proper in their judgment. The liquor tax law (chapter 112, Laws 1896), passed March 23, 1896, in its schedule of laws repealed, and which the act was intended to supersede, included, erroneously no doubt, chapter 744, Laws 1895, relating solely to this sewer, probably intending chapter 774, Laws 1895, which relates to excise. This obvious mistake was corrected by chapter 650, Laws 1896, which took effect May 14, 1896, restoring chapter 744, aforesaid, within a period of 52 days after its supposed repeal by the liquor tax law. This act in terms ratified and confirmed all acts of the commissioners done or attempted under said chapter 744. By an examination of the foregoing legislation, it will be seen that chapter 603, Laws 1892, as amended by chapter 438, Laws 1895, provided substantially the whole procedure to be followed. It empowered the commissioners, among other things, to determine the extent of the sewer, without fixing its southern point by statute. There was no further occasion for chapter 55, Laws 1893, providing for the southern addition to the sewer, and hence its repeal, by chapter 744, Laws 1895, which also designated the southern point of the sewer to be fixed by the commissioners on the Chili road, or between the Chili road and Buffalo road. The work of the commission was commenced under the first act (chapter 603, Laws 1892). William E. Crane was appointed engineer. His plans for the sewer were adopted, the contract let, the work of construction proceeded with under Crane's supervision, and an assessment was made for the cost of construction, as the sewer was then planned from the Genesee river to the junction of the Buffalo road and Field street. It does not appear

51 N.Y.S.—26

that any steps were ever taken under chapter 55, Laws 1893, for the
extension of the sewer, with the purpose of proceeding under that
act; and after the passage of chapter 438, Laws 1895, and subse-
quent to the passage of chapter 744, Laws 1895, by which acts
chapter 603, Laws 1892, was amended and chapter 55, Laws 1893,
was repealed, a second assessment was made for the costs of the
construction of the whole sewer, including the extension. It is of
this assessment that plaintiff complains. Although the work of
construction had proceeded to a considerable extent under chapter
603, Laws 1892, according to the plans of Mr. Crane, and an assess-
ment had been made thereunder, when the amendatory acts, chap-
ters 438 and 744, Laws 1895, were passed, authorizing the appoint-
ment of a new commission, and a taking up and prosecution of the
work practically de novo, the commissioners availed themselves of
the new powers conferred, reviewed the existing plans, with the as-
sistance of Mr. Thompson, an engineer appointed by the commis-
sioners in place of Mr. Crane, resigned, adopted some changes
therein suggested by Mr. Thompson, and extended and adapted the
plans so as to bring the southern extension within the project of the
whole sewer as a single work for all purposes, including construc-
tion and assessment. Upon this rearrangement of the proceedings
for the prosecution of the work, it was renewed and conducted to
completion. The assessment that is questioned was made wholly
under these changed conditions. Upon the trial, considerable tes-
timony was given to show how the first assessment was made, and
that it differed in its results from the existing assessment, and was
more favorable to plaintiff. The comparison cannot be of much
value, as the present assessment must be considered solely upon its
own merits. The commissioners are required by the statute to "ap-
portion the costs upon the several tracts or parcels of land   *   *   *
as they shall deem to be benefited by such sewer in proportion
to the amount of benefit which each shall be deemed by said com-
missioners to receive therefrom. Such apportionment shall be in
the usual form of an assessment roll." No method of apportion-
ment was designated. Its manner and details were intrusted to
the discretion of the commissioners. Consequently they were not
confined to any particular method, and a departure from the man-
ner of making the first assessment in arriving at the second does
not of itself involve an error. The change was within the discre-
tion of the commissioners. .

The inquiry here, confined to the validity of the present assessment,
is to be determined by an examination of the principle adopted and the
manner of its application. As has already been said, the project
was for a trunk sewer, by which is understood such a one as would
provide sewerage, not only for premises along its route, but for such
outlying territory as might conveniently use it by connecting there-
with through lateral sewers. The commissioners deemed both classes
of territory benefited by the sewer, and the theory of their assessment
was, as appears from the testimony, to apportion upon the territory
that had immediate need of the sewer, and could make use of it at
once, a sum sufficient to pay for a sewer for its own use, and upon

the more remote territory such sum as would pay for the enlargement of the sewer, made necessary to meet its requirements.   In applying this principle to the several classes of territory and the numerous parcels within the several classes, a variety of circumstances appeared, causing differences in benefit, not only between the several classes of territory, but differences within the same classes, and in respect to the numerous parcels thereof.   It would not be profitable to recount here the peculiarities of the several localities along the route of the sewer that induced the commissioners to apportion the cost as they did.   It is sufficient to say that they were many, and of great variety, and might well have operated upon their minds to produce the results shown by the assessment.   Somebody's judgment was required to decide the matter.   The statute committed the right of decision to the judgment of the commissioners, and, so long as the decision remains a matter of judgment within their discretion, it must be regarded as final.   I have not been able to discover that the theory upon which the commissioners proceeded was not fair, and conducive to equality of apportionment.   In executing the rule which they had adopted, it is possible that they may not have succeeded in a just apportionment in all cases.   It is probable that there are individual instances of error, where the burden has been placed unequally.   Such is the assertion of the plaintiff, strongly made and strenuously insisted upon in respect to its property, the assessment of which is the subject of this action.   Plaintiff's premises, known as the "McKee Tract," belong to the class of territory not contiguous to the sewer, but within the area benefited by it.   Previous to the undertaking for the construction of a sewer, streets and avenues had been surveyed and staked out through the tract, and it had been plotted into city lots, but improvement stopped at that stage, and it does not substantially differ in appearance from ordinary farm lands.   Immediately north of plaintiff's tract is the Lamberton tract, through which streets had been laid and lots plotted in about the same manner as upon the McKee tract.   Each tract is about equally distant from the sewer.   It is to a comparison of the assessment upon these two tracts of land that plaintiff's counsel earnestly invites the attention of the court, asserting that the comparison will show such a conspicuous inequality as to demonstrate error on the part of the commissioners.   The error, if any, thus sought to be established, if due to imperfect performance of duty, would not warrant the setting aside of the assessment, but would call for a correction that might be obtained by a writ of certiorari.   This action would not afford the remedy.   This doctrine has been reaffirmed in recent cases.   In County of Monroe v. City of Rochester, 154 N. Y. 570, 49 N. E. 139, the court, in its opinion, says:

"That this assessment was highly unjust, the evidence shows; but the reasoning of that opinion is hardly sufficient to take the case out of the rule of law which forbids a party to dispute, by a collateral attack, the correctness of an assessment, where mere irregularities, or errors of a formal nature, have been committed, or where the ground of complaint is in the excess of the amount of the assessment over his due proportion.   The remedy in such a case is by certiorari to review the proceedings objected to.   Apparently, the learned general term justices were of the opinion that, where the evidence shows such an inequality in the assessment as to make it appear relatively grossly unjust, ·

inferences are permissible that the municipal officers had adopted some erroneous principle, which resulted in the great injustice to the complainant, and which justified the intervention of the court, when appealed to, through an action to vacate the assessment. Such inferences, however, must arise in other facts than those showing a merely grossly unequal assessment. It must appear that in the methods pursued in making the assessment the inequality was, or may have been, due to some erroneous rule or principle."

To the same effect is Guest v. City of Brooklyn, 69 N. Y. 506; Hoffeld v. City of Buffalo, 130 N. Y. 387, 29 N. E. 747.

But it is by no means clear that the assessment upon plaintiff's property is disproportionate to the benefit received in comparison with the Lamberton tract and other adjacent tracts. The evidence tends to show that the commissioners considered the McKee tract more eligible to settlement, situated upon a more desirable street or thoroughfare leading to the city, more marketable for city lots, and consequently that it would sooner make use of the sewer. Besides, the general slope of the surface upon the McKee tract is towards the east, while that of the Lamberton tract and others west of it slopes northward. The commissioners concluded that it would be the better course to build the sewer to take the sewage and drainage of the McKee tract into the trunk sewer at Maple street, and enlarged the sewer at that street for the purpose. They decided that the Lamberton tract could be best provided for by drainage into the Gates ditch at Burrows street. That the commissioners might have disposed of the manner of sewerage of the two tracts in practically the same way, by providing sewerage for the Lamberton tract into the trunk sewer through Jay street, in practically the same way as for the McKee tract through Maple street, is probable; but they adopted a different plan, and it cannot be said that it was unwarranted, in view of differences in location, surface conditions, and natural drainage of the two tracts. The difference in plans for the two tracts will enable the McKee tract to use the trunk sewer at a comparatively small expenditure for lateral sewers, whereas the Lamberton tract, by following the plan of the commissioners, must effect its connection by laterals extending northward to the Gates ditch, and by utilizing the ditch, or by improving the same, or by following the valley thereof with lateral sewers that will reach the trunk sewer at Burrows street. This can only be done at a vastly increased expenditure to the Lamberton tract, which would bring the cost of sewerage to that tract up to an equality, proximately, with the assessment upon the McKee tract. This was the theory upon which the commissioners acted, planned the sewer, and made the assessment. There is evidence tending to show that the circumstances referred to account for the difference in assessment of the two tracts. It cannot be said that the evidence is insufficient to support the difference of action of the commissioners in respect to the two tracts.

It is objected that in making the assessment chapter 55, Laws 1893, was not followed, and that the omission invalidated the assessment. As has been said, that law was an independent act, providing for an extension of the sewer and the construction of laterals. The commission proceeded with the main sewer without regard to the extension until after the passage of the amendatory acts of 1895. Chap-

ter 744 of the laws of that year repealed said chapter 55, Laws 1893, and authorized the extension under the provisions of said chapter 744 instead.    The extension was planned, and the assessment had been partially proceeded with, when the liquor tax law was passed, March 23, 1896, which is alleged to have effected the repeal of chapter 744, Laws 1895, thereby reinstating chapter 55, Laws 1893, the provisions of which, it is asserted by plaintiff, should have thenceforward been respected, and did, as a matter of law, govern the acts of the commission in the interval between March 23, 1896, the date of passage of the liquor tax law and the restoration of chapter 744, aforesaid, by the passage of chapter 650, Laws 1896, May 14, 1896.    There was no attempt on the part of the commissioners to comply with said chapter 55.    If its provisions did govern the procedure for the assessment, the failure to follow its directions would be a serious omission. It has been recently held in this state that such an inaccuracy in the enumeration of laws repealed does not effect a repeal of the law thus mentioned.    People v. Lord, 9 App. Div. 458, 41 N. Y. Supp. 343. It would seem that the doctrine of that case is controlling in this, and that the liquor tax law did not effect a repeal of chapter 744, Laws 1895.    But, even upon the assumption of its repeal, the testimony is undisputed that, after the restoration of said chapter 744, the commissioners reviewed all the work and questions that they had had under consideration in the interval covered by the alleged repeal, and not until such restoration did they pass upon those questions definitely. Although they had considered the allegations of objections to the assessment within the interval of supposed repeal, they had not let the questions considered pass from their hands, but had held them in abeyance and under advisement, and did not take final action thereon until the restoration of said chapter 744.    Final action was thus taken upon the assessment after the passage of chapter 650, Laws 1896, and the assessment is not affected by the supposed repeal, even admitting it to have the effect of a repeal, because the repealed act had been re-enacted and was in force when the assessment was in fact made.

Nor am I prepared to adopt the view of the learned counsel for the plaintiff that chapter 650, Laws 1896, did not legalize the acts of the commission during the interval of the alleged repeal.    Legislation was not necessary to legalize the acts of the commission while chapter 744, Laws 1895, was in existence, but only while it was asserted to be out of existence during the period of the supposed repeal.    What the legalizing enactment intended was to validate such action of the commission as would otherwise have been governed by said chapter 744 had it not been repealed; not strictly such action as had been taken "under and by virtue of it," although those were the words somewhat inaptly used.    The meaning and intendment, however, is quite plain in view of the circumstances, and must control the verbal inaccuracy.

Objection is made that the estimate of future improvement taken into account in making the assessment, as testified to by Mr. Thompson, the engineer, was speculative.    Such an estimate, of course, could not be certain.    The improvement is for future wants as well as for

the present. They can only be determined by estimate. Many data were at hand. The growth of the city is a fact. The extent of its growth, and the time such growth has taken in the past, afford some guide for the future, and indicate magnificent probabilities, clearly removed and separable from mere speculation. These probabilities, both in respect to the facilities to be afforded by the sewer and the extent of its accommodation to a particular tract of land, were the subject of estimate, and it cannot be said that the evidence does not furnish a basis for the conclusion reached.

The point is made that the plaintiff's tract receives no benefit, and consequently cannot be assessed. Of course, the principle must be admitted that, if premises cannot receive a benefit, they cannot be assessed, as the assessment proceeds in all cases upon the principle that the benefit is to be commensurate with the assessment. In this case the trunk sewer is brought within easy access of plaintiff's premises. Upon mere inspection of the maps it would seem that lands destined for city lots must have received an increased present value from the sewer improvement. But it is said the plaintiff has no present right, under any existing statute, to construct connecting laterals, or procure the construction of the same. The statutes under which the sewer is constructed, and the whole scheme of the improvement, for the safety of the public health, contemplate a connection between the sewer and the benefited area. A practical view must be taken of what is constantly taking place in like matters. It is unheard of, under the circumstances of such a case as this, that the proper legislation and permits, if necessary, to effect a connection between plaintiff's tract and the sewer, would be withheld. There is practically no obstacle, even admitting that it may be necessary, to procure further statutory authority in order to connect with the sewer. This objection does not seem substantial under the circumstances of this case.

Testimony was introduced, and much is claimed for it, to show that one of the commissioners (Luetchford) was governed by improper considerations in his action upon the commission in the assessment of the McKee tract. His language was proved, and cannot be defended. It did not, however, occur at a time when action was being taken as to the McKee tract. In fact, a preliminary statement of the apportionment had already been prepared before Luetchford's remark, which, when applied to the McKee tract, shows that the McKee assessment had been practically arrived at by informal action of several members of the commission before Luetchford referred to it. The case does not show that the improper, although perhaps casual, remark of Luetchford controlled the action of the commission, or that the action of any member was affected by it; in fact, the contrary appears.

There are several other objections raised by plaintiff that have received careful consideration, but are not considered sufficiently important to warrant the setting aside of the assessment. I must hold that none of the reasons urged will warrant the relief demanded, and that the complaint must be dismissed, with costs to the defendants.

Complaint dismissed, with costs to defendants.