Ruth C. Ferguson, Plaintiff, *v.* Henry H. Stebbins, Jr., and Clarence M. Carpenter, as Sewer Commissioners of Sewer District No. 2 in the Town of Brighton, County of Monroe, New York, Defendants.

Supreme Court, Monroe County, October 3, 1941.

Chamberlain, Page & D'Amanda [Arthur V. D. Chamberlain of counsel], for the plaintiff.

Harris, Beach, Folger, Bacon & Keating [Kenneth B. Keating of counsel], for the defendants.

VAN VOORHIS, J. This action arises over a sewer district created under article 11 of the former Town Law (Laws of 1909, chap. 63) before section 237 thereof was amended (Laws of 1927, chap. 647) so as to authorize the financing of the sewer system while under construction by the issuance of short term certificates of indebtedness. Although it was manifest that money would be required to pay installments of the construction cost, engineering and inspection fees and other expenses of the improvement before completion, the only method by which it could be financed was by a long term bond issue for the total cost of construction. To construct a sewer system without any money until the work was completed was impossible. Consequently, in this instance, the sewer commissioners estimated the total cost of construction after the district had been created and before the work of construction began and the town board issued bonds in the amount so reported to it by the sewer commissioners. The controversy relates to the assessment made in 1925 against plaintiff's lots to pay interest upon these bonds accruing during the ensuing year. At that time only thirty per cent of the sewer system had been constructed. No work had been done upon any portion of the streets on which plaintiff's property abuts, and none of the property owners within the district had begun to have the use of sewer facilities. The assessments upon plaintiff's property for the purpose of meeting the interest upon these bonds were apportioned by the sewer commissioners " in proportion as nearly as may be to the benefit which each lot or parcel will derive " from the sewer system when completed. The assessment procedure purports to have been taken under section 237 of the Town Law as then written, which provided that the sewer commissioners should annually apportion the amounts necessary on that basis. The difficulty which has resulted in the bringing of this action is that when the sewer commissioners apportioned the interest upon these bonds to grow due in 1926 upon the lots or parcels of land according to the benefits derived

from the sewer system there was no sewer system in existence except on paper by which to make their apportionment. No contention is made by the plaintiff that this procedure was illegal; on the contrary, it has been stipulated that the sewer district was created, the bonds issued and the assessment spread in accordance with law. Plaintiff admits that if the sewer system had been constructed without deviation from the plans which accompanied the taxpayers' petition on which the district was created she would have no cause of action.

After the assessments on plaintiff's lots had been levied in 1925 a grade crossing elimination project was undertaken and accomplished whereby the grade of Penfield road was lowered by the construction of an underpass beneath the main line of the New York Central Railroad. At the same time a short strip of Landing road was abandoned as a street. This made it impractical to construct the portions of the sewer shown in the plans accompanying the petition over the portion of Landing road thus abandoned and on Penfield road between Landing road and the railroad. Landing road runs substantially north and south and intersects Penfield road, which extends east and west. The New York Central Railroad crosses Penfield road west of said intersection and crosses Landing road south of the intersection. The railroad thus forms the hypothenuse in a southwest quadrant of what is substantially a right angle triangle with Penfield road, forming the north leg and Landing road the east leg.

Plaintiff's lots front or abut upon these portions of Penfield road and Landing road over which the construction of sewer lines which had been projected on the original plans was abandoned on account of the underpass, but are situated so that they adjoin the sewer mains at the street corner. For this reason, in the case of assessments levied in years subsequent to 1925, plaintiff was allowed a reduction by the sewer commissioners. Each lot continues to be assessed something on account of the improvement. For some reason which it is not material now to enter into the question of plaintiff's rights under the 1925 assessment was not adjusted voluntarily, but was left to be determined in this action. It is, therefore, necessary to proceed now to a decision of that question.

No reason is apparent on account of which this question should be determined under principles of law different from those applicable to the ordinary assessment case. The validity of the general procedure whereby bonds were issued and assessments levied to defray the interest prior to the construction of the sewer system

is not questioned. It has been stipulated, as previously stated, by both sides that the procedure of the sewer district, and of the town and county, was legal in these respects. It has been stipulated further that the particular assessments included in the general county tax for 1925 that were levied against plaintiff's lots for the purpose of defraying the interest upon these bonds were lawfully imposed. The theory of the action is not that these levies were made in the beginning without jurisdiction, nor even that they were excessive or out of proportion to similar assessments against other properties in the district. The plaintiff has sued for money had and received upon the basis that the consideration for these assessments failed when, after they had been levied and paid, it was decided to abandon the construction of the portions of the sewer in question.

It is of the essence of the plaintiff's cause of action that upon the creation of the sewer district a contract obligation arose on the part of the sewer commission for the benefit of the plaintiff to construct the sewer system in the district in exact accordance with the plans that were attached to the petition on which the district was formed. The statute provided (former Town Law, § 234) that " the sewer commissioners of such district shall advertise for proposals for the construction of a sewer system, or an extension thereof, according to such map and plan, finally filed," and that they shall let the contract. Undoubtedly it became the duty of the sewer commission to take reasonable steps under the statute for the construction of the sewer system established by the town board, which had acted favorably upon the petition by creating the district. The obligation of the commission to do so arises not by reason of any contract relationship between them and taxpayers in the district, but, instead, for the reason that it became their official duty imposed upon them by statute. If, after being appointed by the town board, they had failed in their duty in this respect, which was ministerial in nature, performance could have been enforced by mandamus. (*People ex rel. Desiderio* v. *Conolly*, 238 N. Y. 326; *People ex rel. Farley* v. *Winkler*, 203 id. 445; *Holroyd* v. *Town of Indian Lake*, 180 id. 318.) In the present instance the duties of the sewer commission were not violated. They took the requisite steps for the construction of the sewer system outlined upon the plans. They were not forbidden from deviating from the original plans in minor particulars if, after the sewer district was created, exact compliance became impractical due to circumstances over which they had no control. Their statutory duty has been performed. No further duty based on

implied contract can remain. They exercise such powers and are subject only to such duties as are imposed upon them by statute, and these have been executed.

The plaintiff claims to have been wronged by the changes in the plan affecting her property which were made after the 1925 assessments had been levied against her lots. Whether or not she is right about this, cases can readily be imagined where serious injustice would result from such an occurrence if there were no remedy. Where there is a wrong there is generally a remedy. If plaintiff's theory of action based on implied contract be erroneous, what, then, is the nature of the relief adapted to such a situation?

The answer to this question is sufficiently clear. In spreading the 1925 assessments, the sewer commission were called upon to charge the several lots and parcels of land in the sewer district in proportion to the benefits which they would derive from the sewer system about to be constructed. *Prima facie* the sewer system would be precisely that set forth on the original plans. If, however, it should prove to be impractical to follow the plans in minor respects (as must sometimes be the case in the best regulated sewer districts), the assessments should necessarily be adjusted to the benefit derived from the work as actually completed. If the changes in the plans were such as to prevent the lots or parcels of land in question from securing any benefit from the sewer system as finally constructed, then the assessments were made without jurisdiction and, if unpaid, could be set aside collaterally as a cloud upon the title. (*People ex rel. N. Y. C. R. R. Co.* v. *Limburg*, 283 N. Y. 344.) Where the lien has been removed by payment a right of action arises for money had and received based on the unlawful exaction of money by a void assessment which was canceled of record by the payment. (*Jex* v. *Mayor*, 103 N. Y. 536; *Bruecher* v. *Village of Port Chester*, 101 id. 240; *Ætna Ins. Co.* v. *Mayor*, 153 id. 331, 339, 340; *Deady* v. *Village of Lyons*, 39 App. Div. 139, 141.) On the other hand, if some benefit resulted to the lots from the construction of the sewers as built, then the sewer commissioners had jurisdiction to apportion the amount of benefit, and their action in this regard would have been subject to review, if their discretion was abused, solely in the manner provided by section 237 of the Town Law, which is a cognate provision to section 290 of the Tax Law providing for review by certiorari. (*People ex rel. D., L. & W. R. R. Co.* v. *Wildy*, 262 N. Y. 109.) If some benefit resulted, the court could not determine in the first instance to what extent the lots were

benefited without usurping the functions of the sewer commissioners upon whom that duty is imposed by law. The query at once arises, unless the assessments were void on account of no benefit being derived, how much advantage was acquired from the sewer system as constructed. To decide that would be necessary in order to know *how much* of plaintiff's money was had and received by the defendants illegally which she could recover in this action. Actions for money had and received do not lie, as has been shown above, except where the assessments that have been paid are totally void. The reason on account of which it has been held repeatedly that review by certiorari, which is analogous to appeal to the court under section 237 of the Town Law, is the exclusive remedy in cases of overvaluation or inequality, is that the assessors (who are here the sewer commissioners) must first make their determination before the court can intervene, which it does only by way of review. The courts have no power to enter into such matters in the first instance. ( *United States Trust Co.* v. *Mayor*, 144 N. Y. 488; *Horse Aid Society* v. *Town of New Castle*, 241 App. Div. 623; *Young Women's Christian Assn.* v. *City of New York*, 220 id. 49; affd., 247 N. Y. 591; *Sikora Realty Corp.* v. *City of New York*, 262 id. 312; *Lewis* v. *City of Lockport*, 276 id. 336.) In the last case cited it was stated (p. 341): " An action at law cannot be maintained to recover back money paid upon an illegal assessment which the assessors had jurisdiction to impose, and which is not void upon its face, so long as the assessment remains unvacated and unreversed."

It is unnecessary to determine now whether the short Statute of Limitations would be extended by the period of time elapsing between the levying of these assessments and a reasonable opportunity for discovery by plaintiff of the changes in the construction plans. That such an extension would be allowed where compliance within the fifteen days limited is shown to be impossible is indicated by such cases as *Waldon* v. *City of Jamestown* (178 N. Y. 213); *Forsyth* v. *City of Oswego* (191 id. 441); *Murphy* v. *Village of Fort Edward* (213 id. 397). Such a proceeding would long since have been outlawed, even though the length of the limitation were to be regarded as extended by the period in question.

That means that the only question which can be raised in this action is whether any benefit was derived by the plaintiff's lots from the improvement as made which could give the sewer commissioners jurisdiction to spread the assessments.

Instead of charging that the assessments were void *ab initio* the plaintiff has stipulated that they were valid when imposed.

She contends, in effect, that they became void when the construction plans were changed. According to the view taken by the court, which is developed more fully hereinafter, the assessments could not later become void if they were valid in the beginning, but their original validity is to be tested by the nature and extent of the sewer system as it was subsequently constructed. That necessarily follows, because the property owners in the district could derive no benefit except from what actually came to pass. It is evident that plaintiff's counsel had no intention of stipulating away the question of the validity of the assessments against plaintiff's lots in the situation which existed after the construction of the mains in front of her property had been abandoned, and it is thought proper to construe the stipulation so as not to preclude plaintiff from contending that what she paid is money had and received on the theory that her assessments were void in their inception on account of no benefit being derived from the completed sewers.

This theory, however, is unsupported by the facts. Clearly the lots in question derived some benefit from the actual laying of these sewers. Lots A and A-1 have substantial frontage upon Penfield road east of Landing road contiguous to the sewer mains constructed therein. The same is true of Lot C where it abuts upon Landing road north of Penfield road, where sewers were also installed. Lot B is in the southwesterly corner of Penfield road and Landing road and can be connected directly into the mains which meet at the street intersection. These are single lots of irregular shape and must have been increased substantially in value by this sewer construction. It is even debatable whether they were not benefited as greatly as they would have been if the sewer mains had been built according to the original plan. True it is that they are not contiguous to the mains at all points. Nevertheless, assessment according to front footage as a measure of benefit derived may refer to frontage upon the street without necessarily involving total frontage on the sewer mains if connection into the sewer can be made at some convenient point. The lot may be benefited quite as much as though its boundaries were contiguous to the mains throughout. Ordinarily one residence has but one connection into a sewer, and it matters little whether or not other connections would be possible. " A sewer in *one* street, with which the buildings on the relator's premises could be connected, would, at least under present conditions, serve the whole of each lot, and so long as each lot is kept as a single residence no need of a further sewer would ever arise." (*People ex rel. Connelly*

v. *Reis*, 109 App. Div. 748, 751.) Perhaps plaintiff's corner lots should have been assessed less on the original plan on account of not receiving extra benefit from frontage on several streets, but that was in the jurisdiction of the sewer commissioners and could not be passed upon by the courts except in review. The increase in value resulting to taxable properties from the construction of special improvements is the measure of the benefit derived. (*Norwood* v. *Baker*, 172 U. S. 269.) In order to realize this principle, various formulæ have been devised. (*Matter of City of New York* [*Pugsley Ave.*], 218 N. Y. 234, 240.) The front foot rule is one of these methods which has frequently been followed. (*Donovan* v. *City of Oswego*, 90 App. Div. 397; *City of Ithaca* v. *Babcock*, 72 id. 260; *Matter of City of New York* [*Clinton Ave.*], 106 id. 31; aff'd., 185 N. Y. 60.) Assessments on that principle for the construction of sewers can be made where, in the judgment of the sewer commissioners, they correctly represent the proportionate benefit of the improvement to each lot. (*People ex rel. Keim* v. *Desmond*, 186 N. Y. 232, 236.) The rule is not so ironclad that variations are not sometimes in order (*Matter of City of New York* [*East 136th St.*], 127 App. Div. 672, 674; *Matter of City of New York* [*Pugsley Ave.*], *supra*), and the commissioners were not precluded in applying the front foot rule from holding that residential lots are benefited proportionately according to their frontage on the street if adequate access into the main is provided.

For the reasons stated it is unnecessary to decide whether the Statute of Limitations applicable to actions for money had and received would bar the maintenance of the present action.

The sewer commissioners in years subsequent to 1925 may have determined in a proper exercise of their discretion that some reduction should be made in the assessments against these parcels of land by reason of the circumstances which have been mentioned. Under section 237 of the Town Law they were empowered each year to reconsider their previous apportionments and to spread the annual cost according to their ideas of what was equitable. The fact that it was done in one manner during one year in no wise concludes their action in any subsequent year or years. Experience may have shown that what was thought to be fair in one year ought to be changed in another. New possibilities, for example, the subdivision of these properties into a greater number of lots, may have suggested themselves, which would have rendered the previous apportionment unfair. We are not concerned with their particular reasons. The purpose of the statute was evidently to permit the sewer commissioners to alter their views from time to

time without being bound by previous decisions, unless their discretion be abused, in which event it could be reviewed by the courts by appeal under section 237 of the Town Law as in other cases of assessment.

At first impression it may be thought that plaintiff's assessments were levied without jurisdiction as made under some erroneous rule or principle. (*County of Monroe* v. *City of Rochester,* 154 N. Y. 570.) Upon reflection it is clear that this is not the case. The sewer commissioners did not spread the money to be raised on different property or according to a different method from that which the Legislature authorized. The most that can be said is that they acted under a mistake of fact, viz., by failing to take into account that a portion of the sewers would not be built in the vicinity of plaintiff's land. Unless the 1925 assessments throughout the district were void on account of being levied before the sewer system was completed (which is not claimed), the action of the sewer commissioners in making their apportionment must be judged according to the fiction that it was then inevitable that the sewer system would be constructed in the manner in which it was later erected. Manifestly the lots and parcels of land in the district could derive no benefit from the mere paper plans. Whatever benefit might be derived would accrue from the sewer system itself. The assessments were apportioned by the sewer commissioners necessarily upon the assumption that they represented the benefits which the respective parcels of land would derive from the completed work. If the commissioners were mistaken in failing to anticipate that a few hundred feet of sewer main would not be laid, the nature of their error is the same as in the case of any other mistake of fact which makes the assessments subject to review but not to collateral attack. (*Matter of Klock,* 30 App. Div. 24, 38; *Mc Kee Land & Imp. Co.* v. *Swikehard,* 23 Misc. 21, 26; affd., on opinion of DUNWELL, J., *sub nom. Mc Kee Land & Imp. Co.* v. *Williams,* 63 App. Div. 553; affd., 173 N. Y. 630.) The latter case bears other resemblances to the one at bar. The court has no means of knowing how much the commissioners would have allocated to plaintiff's lots in 1925 if they had known truly what portion of the sewers were to be omitted. It would have been within their jurisdiction to have decided, as pointed out before, that these lots were benefited as much as though the sewers had been built as planned. Some benefit there clearly was. The court cannot set itself up with assessment powers so as to declare what the commissioners would have decided to do under different circumstances in 1925. Presumptively they spread the assessments

in the light of all the facts, including the actual extent of the impending sewer construction. If they erred in this respect their action could have been reviewed under section 237 of the Town Law. If lapse of time was necessary to ascertain their error the short Statute of Limitations would not have been a bar. That is the only effect which the unusual chronological order of events presented by this record could have had in varying the rules of procedure applicable to the ordinary assessment case.

The complaint is dismissed.