BOARD OF EDUCATION OF CENTRAL SCHOOL DISTRICT No. 2 of the TOWNS OF ALEXANDER, BATAVIA, BETHANY and DARIEN, GENESEE COUNTY, and ATTICA, BENNINGTON and MIDDLEBURY, WYOMING COUNTY, et. al., Plaintiffs, v. VILLAGE OF ALEXANDER et al., Defendants.

Supreme Court, Trial Term, Genesee County, October 27, 1949.

*Wallace Stakel* for plaintiffs.

*Chauncey S. Kibbe* for defendants.

WARD, J. This is an action for a declaratory judgment brought by a central school district and a taxpayer of the village of

Alexander, New York, against the said village, its Mayor and members of its board of trustees. Various points have been raised by the plaintiffs upon which a declaration of rights by the court is requested. Many of the points of difference between the parties have been clarified by stipulation. The parties have stipulated that the plaintiff school district is not a proper party plaintiff, which leaves only the village taxpayer, Herbert A. Rapp, as plaintiff. The objections originally raised by the plaintiffs as to the validity of the election approving the bond resolution and the validity of the bond issue have been withdrawn by agreement.

The question here presented is essentially one concerning the taxability of school property by a village in which the property is located, for the purpose of construction of a water system by the village. Based on the stipulation of the parties, the court finds the following essential facts: The Village of Alexander proposes to establish a system of water works for its residents. The plaintiff Central School District, consisting of seven towns, includes the village of Alexander within its boundaries. It owns and operates a central district school on land within the village. Pursuant to its plan the board of trustees of the village adopted a resolution authorizing the establishment of a water system for the village and the issuance of $90,000 in bonds to finance the project. At an election thereafter held, the voters of the village approved the plan but further action to implement the resolution was suspended when the central school district and a taxpayer brought this action for a declaratory judgment.

It is clear that this is a proper case for a declaratory judgment. Both parties agree that a substantial present controversy exists for which each seeks the determination of this court as to the respective legal rights involved. The questions raised in this case as brought out in the stipulated facts have been resolved by the court into the following:

(1) Can the central school district property be taxed by ad valorem taxation to defray the cost of the water system?

(2) Can the school property be subjected to a special assessment (a) as to the original water system, (b) as to extension of mains?

(3) If the school property is subject to a special assessment for either the original water system or extension of mains, can it be made to pay special assessments therefor under the bond resolution herein?

(4) If a special assessment may be levied against the school property, may it be apportioned on the basis of assessed valuation of the school property and, if not, what basis of apportionment should be used?

(5) Would taxation of the school property constitute a taking of property without due process of law?

The first question may be quickly disposed of. By section 1502 of the Education Law, school property is exempt from taxation, and ad valorem taxes clearly come within this exemption. No further discussion or citation of authorities will be made since it is admitted by the defendant village that such is the law.

Question two presents the heart of this action. Before inquiring into it, however, it may be well to clarify a point which runs throughout the papers and briefs in this matter and which arises out of a misunderstanding of the wording of the Village Law. The plaintiff attempts to show a cleavage between the establishment of the water works proper and the extension of the lines on the basis that the former is covered by section 223 of the Village Law and the latter by section 224. The plaintiff argues that the village must act under section 223 to erect the water supply source and then act under section 224 in order to lay the lines to carry the water to the consumers through mains. It is the opinion of this court that this is not a correct interpretation of the statute. A careful reading of the sections discloses that the Legislature intended to cover by section 223 the original establishment of a functioning water system including a source of supply—distributing mains and distributing pipes, etc. The wording of that section clearly indicates that intention when it refers to a " system " and provides that a map shall be prepared showing the sources of water and " a description of the lands * * * and the mode of constructing the *proposed water works and the location thereof, including reservoirs, mains, distributing pipes and hydrants* * * *. *The board may construct such water system* by contract or otherwise * * *." (Italics ours.)

Section 224 begins by providing that a board of water commissioners shall supervise " * * * * *a system of water works acquired or established* under this article." (Italics supplied.) Then it provides for repair of the system and *thereafter* provides that the board " may, from time to time, extend the mains or distributing pipes within the village " or it " may, *in lieu of extending the mains,*" use existing funds for improving the " *existing system,* such as mains, reservoir," etc. (Italics

supplied.) This wording clearly envisages an original system of water works including sources of supply *and mains and distributing pipes* under section 223. The line of reasoning set forth by plaintiff as to two necessary steps in the establishment of a water system cannot therefore be followed by this court.

The other point made by plaintiff in this connection is that there is no assessing power under section 223 and therefore the village may not levy special assessments to defray the cost of the improvements under that section. This point must be decided against the plaintiff when one considers that subdivision 38 of section 89 of the Village Law grants the village power to levy assessments for all local improvements. That provision is adequate to cover the point when read with the power of the board of trustees to furnish a water supply as set forth in subdivision 16 of section 89. The conclusion that there is a power to assess for a water system under section 223 is further supported when one considers that, as just discussed, section 223 covers the complete original system which presents local benefits for which assessments should be levied just as much as for the extension of mains covered by section 224. To say that the Legislature intended to authorize special assessments for an extension after an original main had been laid but not for the laying of the original main is unreasonable.

An explanation of why assessment language is included in section 224, and not in the preceding one, may lie in the fact that section 224 deals with the power of the *board of water commissioners* and grants to it the authority to levy special assessments. Section 223 covers the establishment of the original system, the financing of which is done by the *board of trustees* of the village by resolution as provided in section 221. Since the board of trustees already possessed power to assess for local improvements under subdivision 38 of section 89 and power to provide a water supply under subdivision 16 of section 89, it was unnecessary to include in section 223 any further authority to levy special assessments.

It being established therefore that the village may levy a special assessment on ordinary property within the village for its complete original water system under the sections of the Village Law just discussed, we come now to the question of whether such special assessment may be levied upon the property of the central school district.

In considering the question of exemption of property from any taxation certain general principles set the stage. It is well

settled that generally there is a presumption against such exemption. (*People ex rel. Metropolitan St. Ry. Co.* v. *State Bd. of Tax Comrs.*, 174 N. Y. 417; *Roosevelt Hospital* v. *Mayor, etc. of City of New York*, 84 N. Y. 108.)

Furthermore, an exemption must be specific and not based on some implication. An exemption has been held to be a creature of statutory law which must be defined in precise and definite terms and cannot rest on ambiguities or conjectures as to policies behind the statutes. (*County of Herkimer* v. *Village of Herkimer*, 251 App. Div. 126, affd. 279 N. Y. 560; *Matter of Syracuse, B. & N. Y. R. R. Co.* v. *Van Amburgh*, 223 App. Div. 485; *Union Free School Dist. No. 11* v. *County of Steuben*, 178 Misc. 415, 420).

The question of whether school property is subject to a special assessment was considered by the Court of Appeals in *Board of Education* v. *Town of Greenburgh* (277 N. Y. 193). There a special assessment was levied against school property for the improvement of a street on which the property was located. The court in holding that section 1502 of the Education Law did not exempt school property from a special assessment for a local improvement stated on page 199: "Taxation is the rule, not the exception. Conversely, exemption from taxation is the exception and not the rule, and the Legislature must specifically exempt or clearly demonstrate its intent to exempt real property from taxation before any exemption can be claimed or maintained. Especially must this be so where unjust and inequitable results would obtain from the exemption of property deriving special benefit from an improvement."

A similar holding occurred in *Matter of Dinn* v. *Board of Education*, (121 Misc. 633), wherein a special assessment on school property for the construction of a sewer was upheld.

From the above authority, it appears clear that the central district school property is subject to a special assessment for a local improvement. There being no doubt that a water system constitutes a local improvement, the school property involved herein is not exempt because of its character as such. We may therefore look to principles of law governing special assessments as applicable to other types of property to determine whether the school property is subject to assessment under the set of facts herein presented.

The question of whether a religious institution, exempt from taxation generally, is subject to a special assessment for principal and interest on water district bonds was passed on in *Nuns of the Order of St. Dominic* v. *Town of Huntington* (268

N. Y. 580). There the plaintiff owned land in the sixth enlargement of a water district. Bonds had been issued and sold by the water district for laying out and completing a water plant and for laying mains in the sixth enlargement thereof. Water taxes were levied against the plaintiff's property for its portion of interest on bonds whereupon plaintiff sued to have the taxes declared void. The Court of Appeals without opinion unanimously affirmed the Appellate Division which in turn had affirmed a judgment of Special Term in favor of the defendant.

The *Huntington* case (*supra*) was discussed and followed in *People ex rel. New York School for Deaf* v. *Townsend* (173 Misc. 906). In that case the plaintiff, a charitable institution, brought a certiorari proceeding to review certain assessments on its property for construction and maintenance of a water district, an ash and garbage disposal district, a fire district and a sewer district. The official referee found that these levies were special assessments for local improvements and not within the relator's exemption as a charitable institution.

An examination of the record in the *Huntington* case (*supra*) reveals that the water district taxes so-called, were levied on the basis of assessed valuation upon all the property within the water district. There appears no argument on the method of apportionment, so it is not controlling on that point, especially since the case did not go up on certiorari and it is doubtful if the point would have been passed on, even if raised by plaintiff. The *Huntington* case (*supra*) is important, however, for our purposes in another respect. There the petitions for the establishment and extensions of the water district did not contain a statement that the cost of the water system should be assessed upon the property within the district in proportion to the benefits received. Likewise, in the present case, the bond resolution of the Village of Alexander does not appear to contain a provision for assessment on property benefited in proportion to the benefits received. In that regard, the two cases are similar and adds to the weight the *Huntington* case (*supra*) carries in the disposition of the instant matter.

It is settled law that a special assessment is based upon the theory that it represents a payment for special benefits accruing to the property as a result of the local improvement and, unless a benefit can be found, no special assessment may be sustained. (*Norwood* v. *Baker*, 172 U. S. 269; *Illinois Central R. R. Co.* v. *Decatur*, 147 U. S. 190; *People ex rel. N. Y. C. R. R. Co.* v. *Limburg*, 283 N. Y. 344; *People ex rel. D. L. & W. R. R.*

*Co.* v. *Wildy,* 262 N. Y. 109; *Matter of City of New York [Juniper Ave.],* 233 N. Y. 387; *Matter of City of New York [Pugsley Ave.],* 218 N. Y. 234; *Ambassador Management Corp.* v. *Village of Hempstead,* 186 Misc. 74, affd. 270 App. Div. 898, appeal dismissed 296 N. Y. 666, certiorari denied 330 U. S. 835; *Matter of Taxpayers, etc. of City of Rochester,* 136 Misc. 278; *Matter of Starr Street,* 73 Misc. 380.)

The principle was well stated in the *Norwood* case (172 U. S. 269, *supra*) when the Supreme Court at pages 278–279 said: '' As already indicated, the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement.''

Whether benefits are received by property sought to be assessed is ordinarily a question of fact. The test as enunciated by LEHMAN, J. of the Court of Appeals in the *Wildy* case (262 N. Y. 109, *supra*) is not whether as now used by its present owner any advantage is received, but whether its general value is enhanced. This principle was also followed in *Matter of Hun* (144 N. Y. 472), *Ferguson* v. *Stebbins* (177 Misc. 498), and *Matter of Taxpayers, etc. of City of Rochester* (136 Misc. 278 *supra*).

In the *Rochester* case (*supra*) the court found that certain assessments for a sewer were '' substantially '' beyond the benefits received. At page 280 of its opinion, the court states: '' No additional drainage of sewage has been, or could be, provided by the sewer, and the rights of surface drainage, existing prior to the construction of the sewer, remain just the same as theretofore. These are considerations that the assessors were required to take into account, since the assessments upon the property within the assessable area are required to be made, not by an arbitrary distribution of the expense of the sewer according to the acreage of the property assessed, but according to the benefits received.''

It has been held, however, that the money value of the benefit and the assessment need not be equal. The benefits should rather determine the ratio upon which the assessments should be determined. (*People ex rel. Equitable Life Assur. Soc.* v. *Pierce,* 187 App. Div. 437.) There the question was whether an owner of assessment bonds could compel the commissioners to assess new taxes to pay a deficiency arising because the original assessments for a sewer were too small. At page 441 of its opinion, the Fourth Department states as follows: '' The second

contention of the appellants, relative to power to levy a second assessment, arises through apparent misconception of counsel of the general scheme of taxation. It is argued upon the fallacious theory that the tax levied against each parcel of land represents the judgment of the commissioners of the extent of the benefit received by that land, that is, that the tax equals the benefit. This is not true. In the ordinary assessment roll the tax is laid upon the value of the property assessed. In projects like this the tax is not based upon values at all, but is laid upon the benefits received. The benefits may equal, exceed or be less than the tax itself. The ascertainment of the benefits is for the sole purpose of establishing an equitable and legal ratio of assessment among the landowners. A landowner may have been benefited $1,000 and be taxed thereon only ten per cent of that amount. Or he may be benefited $100 and the cost of the improvement may be so large that his tax will be in excess of that amount.''

As previously pointed out, the determination of benefit is ordinarily a question of fact, unless the court can say as a matter of law that no benefit can result. Thus, where property has been permanently dedicated as a public way, as a railroad right of way, it can be said as a matter of law that such property can not benefit from the opening or widening of a street. (*New York, N. H., & H. R. R. Co.* v. *Village of Port Chester,* 149 App. Div. 893, affd. 210 N. Y. 600.) Not so with property used as railroad yards, as was held by the Court of Appeals in the *Juniper Avenue* case (233 N. Y. 387, *supra*) (street opening) and the *Wildy case* (262 N. Y. 109, *supra*) (assessment for sewer running across railroad yards). See also, *Matter of Erie R. R. Co.* (257 App. Div. 922), where a railroad right of way was held assessable for the cost of a street improvement abutting the right of way. The court there found that there was some benefit and distinguished the *Port Chester* case (*supra*) on the ground that the right of way in that case ran above the street and therefore no benefit could result.

Applying the above principles to the present case, it cannot be said as a matter of law that the central district school's property can receive no benefits from the water system of the Village of Alexander. There is no agreement between the parties as to benefits which might accrue. Certainly the school property may receive some benefit in the event its own well becomes inadequate or in the event an addition to the school is made, which makes the present supply insufficient. The value of the school property will be enhanced certainly by the central water

supply; perhaps not its value as school property, but for other possible uses. Here it cannot be said that the property is permanently dedicated to the one use, i.e., for a central district school.

The point has been argued by plaintiff that the school has its own wells. Assuming the property is located within the assessment area, which it is in this case by virtue of its location within the village and in a position to be served by the water system, its private supply does not relieve it from assessment. (*O'Flynn* v. *Village of East Rochester,* 292 N. Y. 156; *People ex rel. D. L. & W. R. R. Co.* v. *Wildy,* 262 N. Y. 109, *supra*; *Delaware & Hudson Canal Co.* v. *City of Buffalo,* 39 App. Div. 333, affd. 167 N. Y. 589; *Ferguson* v. *Stebbins,* 177 Misc. 498, *supra.*)

The Court of Appeals in the *O'Flynn* case (*supra*) passed upon a special assessment for a village electric utility service imposed on the plaintiff which maintained car shops within the village. The village plant was inadequate to serve the plaintiff's shops. The court upheld the assessment and pointed out that even in the case of special assessments '' There is no unconstitutional discrimination because of the nonreceipt of direct benefits unless the facts are deemed sufficient to show action ' palpably arbitrary and a plain abuse of power.' '' (P. 165.)

It is submitted that a special assessment on the central district school property for a water system will not be arbitrary and an abuse of power. The *Wildy* case (*supra*) is also helpful on this point. There the railroad did not have a need for a sewer for which it was being assessed. At page 113 the court points out: '' Because the railroad company has not chosen to connect its yards with the sewers, it does not follow that it may not find it to its advantage to do so in the future.''

A similar holding was made in *Delaware & Hudson Canal Co.* v. *City of Buffalo* (39 App. Div. 333, *supra*). In that case, the canal company had dredged a channel in the Buffalo River in front of its property adequate for its own purposes. An assessment for the dredging of a larger channel by the city of Buffalo was nonetheless upheld. It should be pointed out that in each of these cases, some benefit to the property involved was found by the court. It, therefore, follows that because the central school district property maintains its own water supply is not controlling on the question of benefit to it.

Based upon the authorities discussed above, a special assessment could be sustained in the case at bar. This conclusion is reached in spite of the general rule of statutory construction against special assessments found in rules of statutory construction (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942

ed.], § 313). Here the rule is inapplicable, since there is no need to resort to rules of construction. The answer to the second question, therefore, is that the school property here involved is subject to a special assessment for a water system, including both the water works and the distribution system.

The next question must also be answered in the affirmative, i.e., the special assessment may be levied under the bond resolution involved herein. The fact that the resolution did not include a provision for assessments on the property benefited, merely leaves it to the general principles underlying valid special assessments. See *Nuns of the Order of St. Dominic* v. *Town of Huntington* (268 N. Y. 580, *supra*) wherein the petition for the establishment and enlargement of the water district did not include such a provision but the assessment was upheld by the Court of Appeals.

Question four presents the question of apportionment. In other words, if the school property is subject to a special assessment, how much should it pay? This court will not decide what method of apportionment should be adopted by the village. The briefs state that the village proposes to determine the assessment on the assessed valuation within the village. The complete facts are not before the court. It is impossible to say whether the assessed valuation basis would result in a ratio in proportion to the enhancement of the value of the property. Assessed valuation was involved in the *Huntington* case (*supra*) but not discussed. That method was specifically rejected in the case of *Matter of City of New York* (*Sixth Ave. Elevated R. R.*) (181 Misc. 1028). There special assessments for the removal of the Sixth Avenue elevated were discussed and various methods of apportionment evaluated. Beside eliminating the assessed valuation basis because of inequities existing in that case, the court goes on to throw out an assessment basis on the value of the property. The support for assessments based on frontage is cited and finally a system of areas with a factor, based on a constant of ten, giving to each area along the line, was decided upon by the court.

In *Matter of City of New York* (*Pugsley Ave.*) (218 N. Y. 234, *supra*) under the New York City Charter requiring special assessments based on benefit, the court states at pages 240–241: " The basis of the assessment is the benefit derived from the improvement effected by the proceeding, and it is immaterial what theory or principle is adopted provided only that it shall meet the requirement of the statute and distribute the cost proportionately to the benefits received."

An example of an assessment system based on benefits is found in *McKee Land and Improvement Co.* v. *Williams* (63 App. Div. 553, affd. 173 N. Y. 630). In that case, it was a question of assessments for a sewer. The assessment area included land which could not use the main trunk sewer unless at a later date lateral sewers were laid, as well as the property then served by the main sewer. Assessments were made on the latter land in an amount sufficient to pay for the cost of a sewer for their own use and on the former property in an amount to cover enlarging the original sewer and to lay lateral sewers to that section. The court in that case upheld the system of apportioning the cost of the improvement.

A recent case throws some light on the method of apportionment. In *Matter of Haskell* v. *Fisk* (273 App. Div. 153, leave to appeal denied 273 App. Div. 1056), a sewer district was organized and trunk sewers and some lateral sewers were laid. The district then ran out of money. The land beyond the sewers then laid was assessed at one half the rates charged the land served by the sewers. HARRIS, J., writing for the Court, after pointing out the strong presumption in favor of the regularity and legality of the assessment, pointing out that all property involved benefited through the clearing up of unsanitary conditions although the benefits varied with location. The court held the one-half rule of thumb was incorrect and returned the case to the town board for reconsideration. An interesting concurring opinion was written in this case by LARKIN, J. In it he suggests the cost of the trunk sewer system be separated from the cost of lateral sewers. All owners would then pay part of the cost of the trunk system and a separate assessment would be computed for the cost of the lateral system.

It is not for this court to spell out in detail the apportionment method. Principles only have been discussed. The responsibility for determining the method of assessment rests with the assessing authority subject to review. This determination will only be made after all available facts are known. Any objection to a method of apportionment, when, as, and if the village definitely decides on such, should be made in a proceeding in the nature of certiorari after the assessment is levied (*County of Monroe* v. *City of Rochester,* 154 N. Y. 570; *McKee Land and Improvement Co.* v. *Williams,* 63 App. Div. 553, *supra*). The determination of whether there is a benefit is for the court, but the extent of the benefit is for the local authority. (See *Matter of City of New York* [*Juniper Ave.*], 233 N. Y. 387,

*supra,* and *Matter of Syracuse, B. & N. Y. R. R. Co.* v. *Van Amburgh,* 223 App. Div. 485, *supra.*)

In the *Van Amburgh* case (*supra*) the court at page 487 points out this distinction in the following language: " It should be understood at the outset of the discussion that no determination has yet been made of the benefits to the respective parcels of property within the district for the purpose of assessment. The question of apportioning the cost is quite different from that of determining whether any property may be taxed at all. (*Hancock* v. *City of Muskogee,* 250 U. S. 454, 457.) We have here to consider only the question of whether there is or will be any benefit whatever to the railroad property." In that case, the plaintiff had initiated a certiorari proceeding objecting to having its property included within a water district. The certiorari order was dismissed by the decision referred to.

Upon consideration of the authorities, the answer to question four appears clear. The court will not determine the method of apportionment, that being the prerogative of the assessing authority after due deliberation of all facts in the light of the legal principles discussed. As a matter of law, it cannot be said that apportionment on assessed valuation is or is not valid.

The fifth question as to whether a special assessment on school property will constitute a taking of property without due process of law must be answered by the court in the negative. Provided an assessment can be justified as being based on benefit, the question of a taking by due process does not arise. The case of *Gaynor* v. *Marohn* (268 N. Y. 417) cited in plaintiff's brief on this point is not controlling. There, land outside the district was assessed for the improvement. The court specifically states at page 425: " That the money is to be raised by taxation on the property of those deemed to be benefited within the district is constitutional has heretofore been decided by this court [cases]." In the instant case the school property is located within the village. The assessment of school property as a result of which taxpayers in the school property will pay through their school taxes was specifically approved in *Matter of Dinn* v. *Board of Education* (121 Misc. 633, *supra*). Nor as previously discussed can it be seen how assessment of school property herein, if in proportion to benefit, can be classed as arbitrary or an abuse of power under the limitation in the case of *O'Flynn* v. *Village of East Rochester* (292 N. Y. 156, *supra*). The constitutional argument presented by plaintiff may therefore be dismissed as unfounded.

In conclusion, therefore, the court holds that the school property is not subject to an ad valorem tax; that it is subject to a special assessment covering the complete original water system in proportion to benefit; that the school property, as a matter of law, can receive some benefit; that the special assessment may be made under the bond resolution passed by the village of Alexander; and that there is no constitutional question of due process raised herein. The court cannot decide, in this action for declaratory judgment, the detailed method of apportionment. Any question of excessive assessment must be left for relief by way of article 13 of the Tax Law.

Let judgment be entered accordingly.